STATE *v.* TURNER.

1. In a prosecution for murder evidence of the general bad character of the deceased is irrelevant, but evidence of his bad character for violence, treachery, &c., is admissible under a plea of self-defence, if such character was probably known to the prisoner.

2. Where it appeared that deceased had used an axe in a previous encounter with the prisoner and had then followed prisoner to his store, the character of deceased for violence was then a fact relevant to the motive of the prisoner; and the general reputation of deceased for such character was also relevant, because, if generally known, the prisoner himself probably knew it.

3. The judge charged the jury: "I charge you that in this particular case, if you believe the defendant's statement that the deceased had told him, 'God damn you, I will kill you,' and accompanied those words by moving towards the door with an apparent purpose of put-

ting the threat into execution immediately, then a verdict of man-slaughter might be proper in the case; or if the circumstances did not prove to your satisfaction that there was malice, either express or implied." *Held,* that the judge thereby erred in excluding from the jury all consideration of self-defence in connection with the facts referred to.

4. An alleged error in a detached portion of the charge, inconsistent with the charge when considered as a whole, is not a proper ground for exception.

Before NORTON, J., Spartanburg, October, 1887.

This was an appeal from a conviction of Geo. S. Turner for manslaughter, under an indictment charging him with the murder of Julius Metskie on June 27, 1887.

While Mrs. Louisa Case, a witness for the defence, was on the stand she was asked: "Q. Did you see any scars about him (deceased)? A. Yes, sir, plenty of them. Q. Where were they? A. On his head. Q. Did he tell you how he got those scars? A. Yes, sir." The solicitor objected to any further answer to this last question, and the judge sustained the objection, saying that it would be hearsay. Defendant excepted.

And again: "Q. You have got a son about his age, haven't you? Near about grown? A. Yes, sir; pretty near sixteen years old. Q. What uneasiness did you feel in reference to your son and Mr. Metskie's coming in contact with each other?" The solicitor objected. His objection was sustained and defendant excepted.

The charge of the judge to the jury *inter alia* was as follows: Now we come to the defence set up in this case. It is self-defence. Ordinarily self-defence is where one who had no other possible means of preserving his life from one who combats with him on a sudden quarrel, kills the person by whom he is reduced to such inevitable necessity; and also he who, being assaulted in such a manner and in such a place that he cannot go back without manifestly endangering his life, kills the other without retreating at all. The killing must have been for the preserving of the life or saving the person who kills the other from serious bodily harm. Under the law, as it existed before the invention of firearms, it was commonly illustrated by the requirement that the slayer

should retreat to the wall or some obstacle beyond which he could not safely go. Since the invention of firearms the very same principle applies, but the illustration of retreat to the wall or other obstacle does not now apply; because the more open the space, the greater danger, very frequently, is incurred by the retreating party. The question is: Did the person who killed the other, claiming to act in self-defence, form his judgment upon well founded facts? not whether he really believed that he was himself in danger. Of course, if he did not really believe he was in danger, he would be guilty of murder, because then the absence of excuse would exist. But he is bound to form such a judgment as a man of ordinary nerves and judgment would form if placed in the like circumstances. He forms it at his peril, whether twelve of his countrymen, sitting as you do, will say that, if they were situated as he was, that they would have come to the same conclusion, that he could not have safely retreated without manifest danger of death or great bodily harm.

Doubtless, gentlemen, you have photographed before you in your minds the situation at the time of the killing. You, in your minds, can see the window, the doors, the partition, the situation of the respective parties, and it is for you to judge as reasonable men whether or not the defendant here could have protected himself by retreating or by barricading against the deceased. If you come to the conclusion that he could have protected himself from death or great bodily harm by such a course; that the peril was not so imminent that he did not have time to pursue one or the other of these remedies or such other method of escape as may suggest itself to your minds, then the defendant is not entitled to set up self-defence in the action.

I am requested by the defendant to charge you, gentlemen, that "It is not denied in this case that the killing of deceased was on the premises of the defendant, and in such case the law accords to the defendant peculiar privileges of self-defence not accorded elsewhere." I charge you, gentlemen, that that is good law, if you should come to the conclusion that it is applicable in this case. The request is true in actions of assault and battery, or even in homicide where the slayer is endeavoring to eject a trespasser from his premises. The law says in regard to the

ejecting of a trespasser, that ordinarily the first thing to be done is to put your hand gently upon the trespasser and to use only so much force as is necessary to eject him from the premises. But if you are trying to eject a trespasser and he comes at you with great violence with a drawn weapon, or in such a manner as to endanger your life or to be likely to do you great bodily harm, then you are not bound, in the first instance, to resort to putting your hand upon him gently. You may use such force as is necessary to prevent the injury to yourself. You may use such force as is necessary to eject the trespasser.

But where the killing proceeds from some other cause and not from an effort to eject a trespasser, then the same rules apply as if the killing had occurred in a public place or on the land of another. For instance, if you should come to the conclusion that in this particular case the cause of the killing was not an effort to put the deceased off of the land, but was done by one supposing himself entitled to the plea of self-defence, or was done upon sudden heat and passion, or was done for the purpose of revenging an insult, with malice, then, in either of those cases, gentlemen, the defendant would be entitled to no peculiarity in his right of setting up self-defence.

The jury having returned for further instructions, the judge further charged:

The difference between murder and manslaughter is this: In murder there must be malice; in manslaughter there is no malice. Manslaughter arises when a man, upon sudden heat and passion, kills another, although he may not be justified by any act of the person whom he has killed in killing him—may not be doing it in self-defence. Murder and manslaughter are each unlawful killings of a person, but the difference between them is that one is with malice and the other without malice. Malice, I think you fully understand, is the wrongful determination to kill a man without sufficient legal provocation.

If you should come to the conclusion in this case that the defendant wrongfully killed the deceased, then your first inquiry would be whether it was done with malice aforethought, either expressed or implied. You cannot know whether the party had malice except from outward circumstances. Malice express is

STATE *v.* TURNER.

proven by such acts as lying in wait, by antecedent threats, old grudges, and such things as that, proving before you and to your satisfaction that the killing was done under the antecedent grudges or under the state of mind which existed when the threats were made.

Manslaughter is where one kills another upon sudden heat and passion, provoked by some sudden attack, although not sufficient attack to justify the killing or excuse the killing, or where in anticipation of an attack.

I charge you that in this particular case, if you believe the defendant's statement that the deceased had told him, "God damn you, I will kill you," and accompanied those words by moving towards the door with an apparent purpose of putting the threat into execution immediately, that then a verdict of manslaughter might be proper in the case ; or if the circumstances did not prove to your satisfaction that there was malice either express or implied. Implied malice is where a man does an act without sufficient provocation or apparently no provocation. Though the purpose were formed immediately and just before the killing occurred, yet the malice would be inferred from the want of proper cause. For instance, suppose that in this particular case you believe that the deceased had stood still outside of that window looking in upon the defendant with his hand hanging down, and said the words, "God damn you, I will kill you," and made no movement towards the execution of his design, then the words would not justify the killing—they would not mitigate the killing to manslaughter. No words ordinarily will mitigate a killing to manslaughter. They ought to be accompanied by some act showing an intention on the part of the person who was killed to carry out the threat.

The defendant was convicted of manslaughter, and was sentenced. He appealed upon the following grounds :

I. Because the Circuit Judge erred in not allowing Mrs. Louisa Case to testify what the deceased had told her as to how he had received certain wounds and scars upon his head.

II. Because the Circuit Judge erred in not allowing Louisa

Case to testify as to the cause of her apprehension of a conflict between the deceased and her son.

III. Because the Circuit Judge erred in not allowing Wm. Case to testify as to the general character of the deceased for violence.

IV. Because the Circuit Judge erred in refusing to allow M. A. Connor to testify as to the general character of the deceased for violence.

V. Because the Circuit Judge erred in charging the jury in the following words: "Ordinarily no words will sufficiently modify an unlawful killing to authorize a verdict of manslaughter, but when words of menace of bodily harm are accompanied by acts denoting an immediate intention of following them up by an actual assault, they may sometimes reduce the killing to manslaughter—as in the present case. If you conclude that the deceased while standing at the window said to the defendant, 'Damn you, I will kill you,' and accompanied the words by moving towards the door, you would be justified in finding a verdict of manslaughter, if therefrom you really think that that influenced the defendant to act hastily."

VI. Because the Circuit Judge erred in charging the jury as follows: "It is for you to judge as reasonable men whether or not the defendant could have protected himself by retreating or by barricading against the deceased. If you come to the conclusion that he could have protected himself from death or great bodily harm by such a course; that the peril was not so imminent that he did not have time to pursue one or the other of these remedies, or such other method of escape as may suggest itself to your minds, then the defendant is not entitled to set up self-defence in this action."

VII. Because the Circuit Judge erred in charging the jury that while the law accords a man peculiar privileges on his own premises in ejecting a trespasser, yet if, for instance, in this case the killing was done, not in an effort to eject a trespasser, but by one supposing himself entitled to kill in self-defence, the same rules would apply as if the killing had been in a public place or on the lands of another.

VIII. Because the Circuit Judge erred in charging the jury

as follows: "I charge you that in this particular case, if you believe the defendant's statement that the deceased had told him, 'God damn you, I will kill you,' and accompanied those words by moving towards the door with an apparent purpose of putting the threat into execution immediately, that then a verdict of manslaughter might be.proper in the case; or if the circumstances did not prove to your satisfaction that there was malice either express or implied. For instance, suppose that in this particular case you believed that the deceased had stood still outside of that window looking in upon the defendant with his hands hanging down and said the words, 'God damn you, I will kill you,' and made no movement towards the execution of his design, then the words would not justify the killing; they would not mitigate the killing to manslaughter. No words will ordinarily mitigate a killing to manslaughter. They ought to be accompanied by some act showing an intention on the part of the person who was killed to carry out the threat."

IX. Because the Circuit Judge erred in so charging the jury as to take from them the question of fact: Whether the defendant when he did the killing did actually believe and had good reasons for believing, that he was in danger of great bodily harm or of losing his life, and in effect charging that, though such were the circumstances of the killing, the verdict should be manslaughter and not, not guilty.

X. Because the Circuit Judge erred in charging the jury that the only way in which they could find the defendant not guilty would be by concluding that there was no possible way of barricading against deceased.

XI. Because the charge of the judge in fact and effect took from the jury, in the face of the prisoner's sworn statement upon the trial and the testimony of other witnesses, the privilege of finding a verdict of not guilty.

XII. Because the Circuit Judge erred in charging the jury upon the facts of the case.

*Messrs. Bomar & Simpson, C. P. Sanders,* and *J. S. Coth-ran,* for appellant, cited 12 *Rich.,* 430; 46 *Am. Rep.,* 238; 30 *La.,* 340; 31 *Miss.,* 504; 87 *Am. Dec.,* 500; 2 *Whart.*

*Crim. L.,* § 1,019 ; 1 *Bish. Cr. L.,* §§ 844, 865 ; 23 *Am. Rep.,* 734, 740 ; 26 *Am. Rep.,* 52 ; 13 *S. C.,* 464.

*Mr. Duncan,* solicitor, contra, cited 1 *Whart. Cr. L.,* 641 ; 2 *Gray,* 294 ; 12 *Ibid.,* 168 ; 10 *Cal.,* 309 ; 6 *Texas,* 565 ; 22 *Ala.,* 39 ; 8 *Ired.,* 344 ; 41 *Cal.,* 640 ; 47 *Ala.,* 603 ; 12 *Rich.,* 44.

June 21, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The appellant was convicted of manslaughter at the October term of the Court of General Sessions, 1887, for Spartanburg County, and was sentenced to five years' imprisonment in the penitentiary.   He appeals to this court, alleging error to the charge of the trial judge in several particulars and to the exclusion of certain testimony, as appears in the exceptions found in the "Case."

After full consideration, our conclusion is that the case must go back, and a new trial had.   This is based mainly upon two of the exceptions, or rather upon two of the alleged errors, raised and presented in the exceptions of appellant, to wit : First, the exclusion of certain witnesses offered to testify as to the general character of the deceased for violence ; and, second, to that portion of his honor's charge in which he stated to the jury as follows : "I charge you that in this particular case, if you believe the defendant's statement, that the deceased had told him, 'God damn you, I will kill you,' and accompanied those words by moving towards the door with an apparent purpose of putting the threat into execution immediately, then a verdict of manslaughter might be proper in the case ; or if the circumstances did not prove to your satisfaction that there was malice either express or implied."

The rule as to the character of the deceased in cases of homicide seems to be as follows : In general, no evidence will be admitted when confined to bad character, as contra-distinguished from character for violence, ferocity, vindictiveness, &c., &c., on the ground that such testimony would be irrelevant.   Nor would testimony as to violence and brutality, when offered simply as an excuse or palliation for the homicide, be competent ; for the

reason that no one has the right to take the law into his own
hands and to rid the community, *pro bono publico*, of a dangerous
member simply on the ground that he is dangerous. "But where
the defendant sets up self-defence and proceeds to present a case
of apparent danger honestly believed in by himself as a defence,
then evidence of the deceased's ferocity for strength, brutality,
and vindictiveness is relevant to show the *bona fides* of the
defendant's belief." (*Wharton on Homicide*, 2d edit., §§ 605
and 607.) The great matter in every case of homicide is the
motive which prompted the fatal act, and to ascertain this, in
justice to the accused, all of the surrounding circumstances and
facts calculated to influence motive and to prompt action and rel-
evant to the important issues involved should be admitted.

In our State the prominent case in which the question here
was involved is the case of *State* v. *Smith*, 12 Rich., 430. The
court said in that case : "It seems hardly necessary to observe
that evidence of the character and habits of the party slain is
proper only so far as they can be supposed to have affected the
intention of the slayer in the fatal act. And, therefore, his gen-
eral bad character is inadmissible. The evidence should be con-
fined to a character and habits of violence, treachery, &c., such
as might beget reasonable apprehensions of grievous bodily harm,
and reduce the other party to the apparent necessity to slay in
self-preservation. * * * But whether the general character
or conduct, or particular acts of the description mentioned, be
offered, it appears to be essential to their reception that it should
somehow reasonably appear that the prisoner knew, or may be
supposed to know, such character or conduct ; for if he was
ignorant of them, they could not possibly have modified his inten-
tion in the act of slaying. And, of course, if the relevancy does
not appear from prior evidence in the case, the party offering it
must lay the foundation for its reception in the proof of facts
making it relevant, and the court must necessarily have the
power to decide, subject to review, upon its relevancy." An
analysis of the ruling in this case amounts to this : such testi-
mony is competent where it is relevant, either because of prior
evidence received in the case or where the prisoner has laid the
proper foundation for its reception by proof of facts making it

relevant, and where it reasonably appears that the prisoner knew or may be supposed to have known such character or conduct.

In the case before the court the prisoner and the deceased had fought in the morning, the deceased using an axe in the rencontre. After this fight, and after the prisoner had gone to a neighbor's house, the deceased continued near the scene of the morning conflict, and when the prisoner returned, going immediately into his store house, the deceased followed him closely, and approached the door of his house. What took place immediately, or rather what was said by the deceased at the moment of approaching his door, it is true, was not stated until after the excluded testimony had been offered and excluded. But independent of what might have been said, it seems to us, there was enough in the facts as stated to render competent, at least, testimony as to the deceased's character for violence as bearing upon the act and motive of the prisoner. Here was a man with whom he had fought in the morning, a man who had exhibited a deadly purpose in attempting to kill him with an axe. He had followed him to his house, and without accosting him, was approaching his door. Whether he was a quiet and peaceable man or a man of blood and violence, was a fact which, under the circumstances, if known to the prisoner, he could hardly fail to consider, and which would necessarily have some influence in determining his own course.

But the rule above laid down requires that it should reasonably appear that the prisoner knew, or may be supposed to have known, such character, offered to be proved. We think such knowledge was involved in the proposition to prove the *general character* of the deceased for violence. General character is that character which is generally known, and if the witnesses offered had been allowed to testify, and they had proved that the general character of the deceased for violence was bad, we think it would have reasonably appeared that the prisoner knew this, as well as others.

Next as to the charge of his honor mentioned above. The degree of a homicide in any special case depends upon the motive which prompted the killing, and this is a matter entirely for the jury. The judge should define and explain these different

degrees, and the jury must be governed by the definition and explanations given. But whether any particular crime as defined by the judge has been committed, or whether the case is one of self-defence, as explained by the judge, is a question of fact, and is alone for the jury. Now we do not *intimate*, even, that the jury in this case misinterpreted the facts, being misled by the charge, and that they found manslaughter when their verdict should have been self-defence. We express *no opinion whatever* on that subject. But we think his honor's charge above did not leave the question of self-defence open to the jury. He said the facts stated by the prisoner, if believed by the jury, might reduce the case to manslaughter, excluding thereby all consideration of self-defence in connection with said facts.

Now, self-defence as defined by *Mr. Greenleaf*, 3 vol., section 116, 14th edit., is "where one is assaulted upon a sudden affray, and in the defence of his person, where certain and immediate suffering would be the consequence of waiting for the assistance of the law, and there was no other *probable* means of escape, he kills the assailant." This is the proper definition, which is a question of law, but whether the facts bring the case under this principle is for the jury. And it seems to us that it ought to have been left to the jury to determine, under the facts stated, if proved, whether there was great danger of bodily harm, and whether the prisoner had other probable means of escape besides killing the deceased. Or, in other words, whether he had well grounded reasons to believe, (such as would influence ordinary men,) that his life or body was in danger, and that there was no probable hope of escape but in striking in his own defence, leaving it to the jury to apply the testimony to this principle of law.

We do not understand the judge to have laid down the proposition absolutely that the only way in which the jury could find the defendant not guilty was by concluding that there was no *possible* way of barricading against the deceased, as alleged in one of the exceptions. True, when the charge is taken in detached remarks, a portion might be susceptible of that construction; but when considered as a whole on the subject of self-defence generally, we do not think it is obnoxious to the error assigned in said exception.

The other exceptions are overruled.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.