## STATE v. YOKUM.

Deceased and defendant had been drinking, and engaged in a quarrel, and defendant stepped out of the saloon, followed by deceased, and, when at a distance of about 25 feet, deceased started towards defendant, saying that he had to fight, and in the ensuing scuffle defendant stabbed deceased. Deceased weighed 200 pounds, and defendant was small, and the state's witnesses testified that deceased either had his hands in his pockets or was pulling them out of his pockets when he attacked defendant. No firearms were found on deceased. *Held*, that the exclusion of evidence that deceased was in the habit of carrying firearms constituted reversible error, since such evidence was admissible in determining whether defendant acted in self-defense.

CORSON, J., dissenting.

(Opinion filed December 5, 1900.)

Appeal from circuit court, Butte county. HON. LORING E. GAFFY, Judge.

*Joseph B. Moore, J. I. Woolston,* and *Horner & Stewart,* for plaintiff in error.

*John L. Pyle,* Atty. Gen., and *T. W. La Fleiche,* State's Atty., for the state.

Judgment reversed on re-hearing. William D. Yokum was convicted of murder and by writ of error brought the case to this court. The case was first determined by this court in an opinion reported in

11 S. D. 544, 79 N. W. 835, in which opinion the judgment of the trial court was affirmed. A re-hearing was subsequently granted. This opinion is upon the re-hearing. The former decision of this court is here reversed, the judgment of the trial court reversed and the cause remanded for a new trial.

HANEY, J. The defendant in this action was convicted of murder, and sentenced to imprisonment for life at hard labor. Upon review by writ of error in this court the judgment below was affirmed. State v. Yokum, 11 S. D. 544, 79 N. W. 835. Subsequently a re-hearing was granted, the cause was reargued, and it now becomes the duty of the court to re-examine and again review the record with that degree of care demanded by the importance of the issues involved.

At the trial the homicide was conceded, but defendant attempted to show that it was justifiable on the ground of self-deferse. It was contended upon the original argument, and earnestly insisted by counsel for defendant upon the reargument, that the court below erred in excluding evidence offered for the purpose of showing the custom or habit of the deceased with reference to carrying firearms. In our former decision the exclusion of this evidence was sustained, for the reason that "the state, in making out its case, had not introduced any evidence tending to show that the act of the accused was justifiable or excusable, or that an assault or an attack was made upon the accused;" that there was nothing in the record when the excluded evidence was offered, "that could have caused any reasonable ground on the part of the defendant to apprehend a design on the part of the deceased to commit a felony upon him, or to do him some great bodily injury;" and that "there was no act of the deceased at that time which the evidence could characterize or explain." The

correctness of the conclusions thus reached depends upon the evidence shown by the record to have been received when the excluded evidence was offered, as well as the principles of law announced in our former decision as applicable thereto. In considering the record for the purpose of determining the correctness of our former conclusions upon this branch of the case, every fair and reasonable inference arising from all the evidence tending to prove that the conduct of the deceased was such as to permit the excluded evidence when offered should be indulged. Every person accused of crime is entitled to the benefit of every inference which can be fairly and reasonably drawn in his favor from the evidence upon which his conviction is sought. Having this elementary rule in mind we will endeavor to state the substance of what was disclosed by the record when defendant offered to prove the custom or habit of the deceased with reference to the use of firearms. We think such evidence tended to establish the following state of facts: Deceased was a saloonkeeper, about 50 years of age, who weighed about 200 pounds. He was not generally quarrelsome, but had a manner of making "fellows think he was bad." He and defendant met in the former's saloon. Both men had been drinking freely, and both were pretty drunk. There was a disagreement between them concerning the shaking of dice. Defendant went out of the saloon. Directly afterwards the deceased followed him, saying, as he went out, "That fellow is talking about me, and I will go out and make him shut up." Upon reaching the street deceased, with two other persons, started eastward. Defendant was standing in front of the saloon. When deceased reached a point about twenty-five feet from defendant, he turned around quickly, and said, "What't that?" He instantly started toward the defendant. As deceased was walking eastward defendant had made some peculiar kind of noise with his mouth. As deceased approached defendant,

he said, " Did you do that at me?" Defendant replied, "No, I did that at the kid." Just as deceased reached defendant, he said, "A man who does that at me has to fight." Without taking any forward step, defendant stabbed the deceased twice. There was a scuffle. The deceased returned to the saloon, and was immediately taken to a room above it, where he subsequently died from the wounds inflicted by defendant. From the time deceased started towards the defendant he did not stop until he reeled back from the effects of the defendant's weapon. In the language of one of the witnesses for the state, "It all transpired very quickly; like a flash, almost." As to the manner in which deceased approached the defendant another witness for the government says: "I am not positive as to where Mr. Barnes [the deceased] had his hands. I think he had them in his pockets, but would not swear that he did not reach and pull his hand out of his pocket. It was pretty exciting about that time." Mr. Hare, who was with deceased when he started for defendant, testifies that he "thought perhaps there would be trouble." Evidence had been introduced by the state tending to show that no arms were found upon the deceased when taken to the room over the saloon immediately after the affray, but it is not free from the inference that friends of the deceased may have removed a revolver from his person between the time he was stabbed and the time he reached the room where he died. With this state of facts disclosed, the following question was propounded to a witness for the defense: "You may state what, if you know, was his [the deceased's] custom or practice with reference to carrying firearms." The state objected that the evidence was incompetent, and the objection was sustained. The same objection was sustained to the following questions propounded to another witness for the defense: "I will ask you if you were acquainted with his general reputation for carrying firearms." "I

will ask you to state whether or not you know what was his custom or habit with reference to carrying firearms." It may be that, where the evidence conclusively shows that there was nothing in the circumstances attending the homicide which could have caused any reasonable ground on the part of the accused to apprehend a design on the part of the deceased to commit a felony upon him, or to do him some great personal injury, evidence of the deceased's character, or his habits as to the use of firearms, is irrelevant and inadmissible. But was such the condition of the evidence in this case? Here was a physically large and strong man, under the influence of intoxicating liquor, with whom defendant had recently had a disagreement, rapidly approaching the defendant, exclaiming that any man doing what he accused defendant of having done must fight; one who was still angry because of the previous disagreement, and who, it is fair to assume, appeared to the defendant to be in a violent passion; one who would listen to no denial or apology, and who seemed determined upon having an altercation. When it appears that these acts were done "very quickly; like a flash, almost," and that even the state's testimony shows that the deceased, as he rushed upon the accused, may have reached and pulled his hand out of his pocket, the conclusion cannot be resisted that there was evidence tending to establish a state of facts from which the accused might have apprehended a design on the part of the deceased to do him some great personal injury. The main question in controversy was whether the killing was done in self-defense. Upon that question any evidence which, according to the common experience of mankind, tended to show that the defendant had reasonable cause to apprehend some great personal injury from the conduct of the deceased towards him just before and at the time of the killing was admissible. Smith v. U. S., 16 Sup. Ct. 483, 40 L. Ed. 625. It will certainly be conceded that defendant was in

more actual danger if deceased had a revolver on his person than if he had none. It is equally evident that there was more reason for defendant to apprehend serious results if he believed his assailant was armd than if he believed otherwise; and, if it was generally known that the deceased was in the habit of carrying firearms, it is reasonable to assume that the defendant knew of that habit as well as others. State v. Turner, 6 S. E. 891, 13 Am. St. Rep. 706. There can be no doubt that deceased approached the defendant in anger, and in a threatening manner. What was his design? Or, rather, what was his design as his conduct appeared to the accused? This was a question for the jury. If deceased was known to be in the habit of carrying concealed weapons, and using them in the settlement of personal altercations, it was a material fact to be considered by the jury in determining whether the accused did in fact apprehend that he was in danger of great personal injury. The common experience of mankind teaches that men who habitually carry and recklessly use firearms are more dangerous when angry, excited, or intoxicated that those who do not have that habit; and the reputation of an assailant in this respect, if known, will and should always influence the conduct of the person who is assailed. Upon a reexamination of the record in this action we think the court below erred in excluding the evidence as to the custom or habit of the deceased with reference to the use of firearms; that our former decision, so far as it conflicts with the views now announced, should be reversed; that the judgment of the circuit court should be reversed; and that a new trial should be granted. It is so ordered.

CORSON, J., dissents.