## STATE v. FOSTER.

1. CRIMINAL LAW—SELF-DEFENSE.—Charge as to self-defense—especially the rule as to the "means of escape"—taken in connection with the whole charge on that subject, could not have been prejudicial to defendant. MR. JUSTICE WOODS *dissents.*

2. IBID.—MANSLAUGHTER.—Definition of manslaughter given by the Court in this case as the "unlawful killing of another without malice, express or implied," is not error, since the killing was admitted and self-defense was pleaded.

3. IBID.—MURDER.—Charge that the law presumes that the taking of life by the unlawful use of a deadly weapon is murder, but that presumption is rebuttable, and where the facts and circumstances as to the homicide are brought out, the State must show malice beyond a reasonable doubt, *held* not error, instructions having been elsewhere given as to manslaughter and self-defense.

Before BUCHANAN, J., Greenwood, November term, 1902.   Affirmed.

Indictment against Julius Foster for murder.   From sentence on verdict of guilty, with recommendation to mercy, defendant appeals.

*Messrs. Graydon & Richardson,* for appellant. ·

*Mr. Solicitor Sease,* contra.

No arguments furnished Reporter.

June 27, 1903.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The defendant, upon an indictment

·for the murder of Lewis White, was found guilty, with recommendation to mercy, and sentenced to the penitentiary for life, from which judgment he now appeals upon excep-·tions to the charge to the jury, all other exceptions having been abandoned.

1. The fifth, sixth and seventh exceptions relate to the charge as to self-defense. We quote the whole charge upon this subject as follows: "Self-defense is based upon the law of necessity. A person who sets it up must not have been guilty of any wrong in bringing about the difficulty, having no reasonable or palpable means of escape, but impressed with the overweaning necessity that unless he strikes, and at once, his own life will be taken or serious bodily harm will be inflicted upon his person, and strikes and takes life. The danger must be actual and real, and the necessity must be imperious, or it must be so seemingly imperious and real as to have so impressed a man of ordinary courage and prudence, and he was so impressed. Why is that the rule? It is founded in the knowledge of human nature. Here comes a man with a firearm in his hand, possibly cocked, his eyes ablaze, his lips uttering threats, indicating, so far as a human being can see the intents of another, to take life, and the person acts upon those circumstances and fires; it may turn out there was no load of shot or a shell in that gun, was not a thing in it, yet if a man of ordinary firmness and prudence and courage would have been so impressed that the necessity with these appearances was real, and acted upon those appearances and took the life of a person who possibly was perpetrating a joke, that was not murder—that was not any crime. That man had no right to perpetrate that sort of a joke. Therefore, the law says the danger must be actual, it must be there, and you must 'strike to prevent it. Why doesn't the law furnish a remedy? A person has a right to come to the court house and have a man tried for an assault upon his person, but then it would be too late, as his life will have been taken. Therefore, the law says he is excused if he

strikes in necessary defense of his person, to prevent the taking of his own life or serious bodily harm committed upon his own person.   Not having brought on the difficulty, and being guilty of no wrong in bringing on the difficulty, and having no reasonable or palpable means of escape—if so, he must avail himself of it—and impressed with the overweening necessity that unless he does strike at once his own life will be taken or grievous bodily harm will be inflicted upon his person, and strikes and takes the life of his fellow-being, that is self-defense.   The danger to his life and limb must be there, and the necessity to strike must be imperious, and the assault must be impending, or the danger must be so seemingly pending as to have so impressed a man of ordinary courage, firmness and prudence, and did so impress the man who sets it up.   If that is made out a case of self-defense, it is perfectly complete.   Well, now the law of God and the law of nature justify a man in protecting his life and all those things which are incidental to life.   They have a right to exist.   The presumption is they have a right to continue to exist.   The law of God says, 'Thou shalt not kill,' which means you shall not permit another to take your own life.   You must not take his life, unless it is absolutely necessary.   It is a crime to commit suicide, take your own life.   It is a crime to take the life of a fellow-being, unless the necessity is actual and real, or the necessity was so seemingly real as to have so impressed a man of ordinary courage, firmness and prudence, and did so impress the man who sets it up.   Murder is taking the life of a fellow-being with malice aforethought, either express or implied.   Manslaughter is taking the life of a fellow-being in sudden heat and passion, superinduced upon a sufficient legal provocation. *Self-defense is taking the life of a fellow-being where it is necessary to do it to protect your own person, and to make out a case of self-defense you must show he was not guilty of any wrong in bringing about the difficulty.   He must have no means of escape.   If so, he must avail himself of it.   If he has any possible means of escape, there was no necessity.*

His own life must be in danger, or grievous bodily harm is about to be committed upon his person. The danger must be there, actually and really there, or so seemingly actual and really there as would have so impressed a man of ordinary courage, firmness and prudence, and did so impress the man who sets it up. ·That is self-defense." [1]

The exceptions relate to that portion of the charge which we have italicized above. The fifth exception alleges that the charge in these words, "Self-defense is the taking the life of a fellow-being where it was necessary to do it to protect your own person, and to make out a case of self-defense, you must show he was not guilty of any wrong in bringing about the difficulty," was erroneous. (a) In leading the jury to think that there must have been an *actual* necessity, when it makes no difference whether the necessity really existed or not, if it appeared to the defendant, and would have appeared to a person of ordinary prudence and firmness, to exist. (b) In stating that the defendant must show that he was not guilty of any *wrong* in bringing about the difficulty; whereas, the law only requires of the defendant who pleads self-defense that he shall show that he was without *fault* in bringing about the difficulty, the meaning being that the defendant must show that he gave the deceased no *legal provocation* to make an assault upon him."

With reference to specification (a), it is manifest from a reading of the entire charge that the jury were repeatedly instructed in accordance with appellant's contention. With reference to specification (b), we do not think that there is any material difference in the expressions, "without any wrong in bringing about the difficulty," and "without fault in bringing about the difficulty." The meaning of either of such expressions in the law of self-defense is that the prisoner must not have been the aggressor, and provoked the difficulty himself.

The sixth and seventh exceptions assign error to the charge, "He must have no means of escape. If so, he must avail himself of it. If he has any posssible means of escape,

there was no necessity." It is contended that this charge
was erroneous: (1) because the law requires a defendant
who sets up a plea of self-defense to show only that he had
no *probable* means of escape, or that an attempt to escape
would be at least as dangerous as to stand his ground; (2)
because such charge practically instructed the jury to convict
the defendant, unless the evidence showed that he had *no*
means of escape, although it might have showed that there
was no means of escape apparent to him, or to a man of ordi-
nary courage, prudence and firmness. The general rule of
law contended for by appellant is correct, and is supported
by *State* v. *Turner*, 29 S. C., 44, 6 S. E., 891, and *State* v.
*Jones*, 29 S. C., 236, 7 S. E., 296. In the last mentioned
case, the Court said: "The law, recognizing the imperfec-
tions of human nature, does not require that one charged
with homicide should show that there was no other possible
means of escape when he struck the fatal blow, but he is only
called upon to satisfy the jury that, under all the circum-
stances with which he was surrounded, he really believed
there was a necessity for taking the life of his adversary in
order to preserve his own, or to save him from serious bodily
harm, and that, in the opinion of the jury, those circum-
stances were such as would justify such a belief. *State* v.
*McGreer*, 13 S. C., 464." In the case of the *State* v. *Turner*,
*supra*, the Court approved as a proper definition of self-de-
fense that given by Mr. Greenleaf, 3 vol., sec. 116, 14 edit.,
as follows: "Where one is assaulted upon a sudden affray,
and in the defense of his person, where certain and immedi-
ate suffering would be the consequence of waiting for the
assistance of the law, and there was no other probable
means of escape, he kills his assailant." If, therefore, in
our consideration of the question, we should be restricted to
the particular sentence or expression complained of, isolated
from the context, a case of reversible error would be pre-
sented. But the rule is just and well established in this
State that the charge must be considered as a whole. Thus
reviewed, we cannot think that the jury as reasonable men

could have been misled to the prejudice of appellant. The jury were twice told that one setting up self-defense must have "no reasonable or palpable means of escape," which was quite as favorable for appellant as he could ask—indeed, it was too favorable, inasmuch as it only required that the means of escape should be palpable or obvious and not merely reasonable or probable. Moreover, it must be remembered that self-defense, as stated by the Circuit Judge, is based upon the law of necessity, which includes a consideration of the means of escape. On this matter the jury were four times instructed, "that the danger must be actual and real and the necessity must be imperious, or it must be so *seemingly imperious and real as to have impressed a man of ordinary courage and prudence, and he was so impressed."* The import of the whole charge, and it must have been so understood by the jury, presumably men of "sound judgment," was that the necessity to kill need not be actual or absolute—that is, without possible means of escape—but that such necessity exists in law, if the accused actually believed danger to life or limb imminent, and the circumstances were such as to justify such belief in a person of ordinary firmness and reason. These exceptions must, therefore, be overruled.

2. In defining manslaughter, the Court charged: "Manslaughter is taking the life of a fellow-being in sudden heat and passion, superinduced upon a sufficient legal provocation," and to this appellant's eighth exception is taken, the alleged error being, "that the jury were thus instructed that there cannot be any case of manslaughter unless there has been a legal provocation, and that all other cases of voluntary homicide must be either murder or killing in self-defense; whereas, the statute recognizes that there may be other cases of manslaughter in its definition of the crime, as follows, to wit: 'The unlawful killing of another without malice, either express or implied,' as, for instance, where a man kills his assailant, honestly thinking his own life to be in danger, but the jury find from the evidence that the circumstances surrounding the trans-

action were not sufficient to justify a man of ordinary courage, firmness and prudence in coming to that conclusion."

The definition of manslaughter given by the Court was correct, and in accordance with numerous cases in this State, some of which are: *State* v. *Ferguson,* 2 Hill, 619 ; *State* v. *Smith,* 10 Rich., 341; *State* v. *Davis,* 50 S. C., 422, 27 S. E., 905. There was no dispute in this case that the defendant voluntarily killed the deceased. His plea was that he killed in self-defense. So the Court was dealing with a case of voluntary homicide. The definition of manslaughter in the statute, as the "unlawful killing of another without malice, express or implied," covers not only voluntary but involuntary homicide—as, for example, homicide by negligence. But the case in hand did not necessarily require the broader definition of the statute to be given, and was fully met by the approved definition of voluntary manslaughter, as based upon the common law. Under the theory of the law, "sudden heat and passion upon sufficient legal provocation," rebuts the implication of malice arising from an intentional homicide, and mitigates the crime from murder to manslaughter, which latter is distinguished from murder by the absence of malice. The example stated by appellant's counsel in the exception by way of illustrating his view, viz: "Where a man kills his assailant, honestly thinking his own life to be in danger, but the jury find from the evidence that the circumstances surrounding the transaction were not sufficient to justify a man of ordinary courage, firmness and prudence in coming to that conclusion," merely states a case in which the plea of self-defense could not be sustained, and in which the jury would still have to decide whether the killing was murder, as done in malice, or manslaughter, as done in passion engendered by legal provocation.

3. The last exception assigns error: "In charging the jury as follows, to wit: 'Malice may be implied from an unlawful use of a deadly weapon, not from the mere circumstance that a deadly weapon is used, because a man may use it in self-defense, but it is the unlawful use of a deadly weapon,

whereby life is taken, from which the law presumes malice. * * * Therefore, the law presumes malice from the unlawful use of a deadly weapon, whereby life is taken. * * * The law presumes from the unlawful use of a deadly weapon, whereby life is taken, that life was intended to be taken, and that constitutes murder,' the error being in making the word *unlawful* synonymous with *wilful, deliberate or intentional,* and in ignoring the distinction between an unlawful killing with malice and an unlawful killing without malice, thus tending to confuse the minds of the jury, and make them think that all cases of homicide must be either murder or killing in self-defense, if a deadly weapon is used, and also in practically saying to the jury, that if a man kills another with a deadly weapon, the only escape from a conviction of murder is to show that it was done in self-defense."

The charge complained of was in accordance with the law as declared in *State* v. *Levelle,* 34 S. C., 120. As every sane person is presumed to intend the ordinary and probable consequences of his acts, an intent to kill is presumed from the unlawful use of a deadly weapon whereby life is taken. The use of a deadly weapon in taking human life is unlawful, when it is without legal excuse or justification. In the law of homicide, malice is implied from "a wrongful act done intentionally without just cause or excuse." 19 Ency. of Law, 2 ed., 623. The Circuit Judge was careful to instruct the jury that such presumption is rebuttable, and that where all the facts and circumstances of the homicide are in evidence, the State must prove malice as an element of murder, beyond all reasonable doubt. He also, as shown, instructed the jury as to the law of manslaughter and self-defense. The exceptions are overruled.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE WOODS, *dissenting.* After stating the law of self-defense to the jury in terms not unfavorable to defendant, the presiding Judge in summing up his instructions

said: "Self-defense is taking the life of a fellow-being where it is necessary to do it to protect your own person; and to make out a case of self-defense, you must show he was not guilty of any wrong in bringing about the difficulty. He must have no means of escape. If so, he must avail himself of it. If he has any possible means of èscape, there was no necessity." This last sentence was clearly an erroneous statement of the law, under the decisions of this Court, and being the final statement of the Judge on the subject of which he was speaking, it seems to me it was probably regarded by the jury as the controlling instruction. For this reason, I think there should be a new trial.