**Ronald Francis SMART,
Petitioner–Appellee,**

v.

**William D. LEEKE, Commissioner, South Carolina Department of Corrections; Attorney General of South Carolina, Respondents–Appellants.**

No. 87–7737.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1989.

Decided May 4, 1989.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

The State of South Carolina appeals from the issuance of a writ of habeas corpus, 28 U.S.C.A. § 2254 (West 1977), for convicted murderer Ronald Francis Smart on the ground that a jury instruction on self-defense impermissibly shifted the burden of proof. A panel of this court originally affirmed the issuance of the writ. *Smart v. Leeke*, 856 F.2d 609 (4th Cir.1988). A majority of the court voted for rehearing *en banc*, thereby vacating the panel opinion. 4th Cir.R. 35(c). We now reverse and remand for further proceedings.

I.

Smart was tried in South Carolina state court in 1981 for the murder of two men and two women. In defense of these charges, he presented evidence that one or both of the men killed the women first and he then killed the men in self-defense.[1] The trial court instructed the jury that self-defense was an affirmative defense which Smart had the burden of proving by a preponderance of the evidence.

Smart was acquitted of the murder of the women, but convicted of murdering the men. During a separate sentencing phase, the jury further found that the murders had occurred during the commission of larceny with the use of a deadly weapon. And, on the recommendation of the jury, Smart was sentenced to death. On appeal to the South Carolina Supreme Court, Smart acknowledged that the self-defense charge correctly stated then current state law, but requested permission to argue against precedent. S.C.Sup.Ct.R. 8, § 10. While the court denied the request and affirmed the conviction, it vacated the death sentence due to improper comments

Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, S.C., for respondents-appellants.

David Isaac Bruck, Columbia, S.C., (Bruck & Blume, on brief), for petitioner-appellee.

1. The evidence consisted, in part, of a tape-recorded conversation between Smart and a law enforcement officer after his arrest. Smart also presented two additional defenses in the alternative, contending that the women were accidently killed during a fight between himself and the men or that a fourth man killed both the men and women.

by the prosecutor during the sentencing phase of the trial and remanded for resentencing. *State v. Smart,* 278 S.C. 515, 299 S.E.2d 686 (1982), *cert. denied,* 460 U.S. 1088, 103 S.Ct. 1784, 76 L.Ed.2d 353 (1983). On remand, Smart waived a jury trial and was sentenced to two terms of life imprisonment.

Smart subsequently filed a habeas petition asserting that the self-defense charge improperly shifted the burden of proof in violation of the due process clause. U.S. Const. amend. XIV, § 1. He also contends that the instruction was so contradictory and confusing as to violate due process, relying on *Thomas v. Leeke,* 725 F.2d 246 (4th Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). Finally, he asserts that jury instructions defining reasonable doubt lessened the government's burden of proof.[2]

The district court found that the self-defense charge unconstitutionally relieved the State of its burden of proving every element of the offense of murder, *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), and was so contradictory ·and confusing as to violate due process under *Thomas. Smart v. Leeke,* 677 F.Supp. 414 (D.S.C.1987). The court further found that the due process violations were not harmless, *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), and granted the writ, allowing the State the opportunity to retry Smart. The district court obviously thought it unnecessary to address the challenge to the reasonable doubt instructions.

In *Martin v. Ohio,* the Supreme Court held that states may constitutionally require a defendant to affirmatively establish self-defense by a preponderance of the evidence as long as the government is required to prove all the elements of murder beyond a reasonable doubt. Smart argues that placing the burden on him to prove self-defense effectively required him to negate an element of the crime—malice—and

thereby impermissibly relieved the State of its burden of proof. Upon consideration of established Supreme Court precedent, including the recent decision in *Martin v. Ohio,* we conclude that the self-defense charge did not violate due process.

## II.

Murder is defined in South Carolina as "the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16–3–10 (Law.Co-op.1976). Malice is further defined as the intentional doing of a wrongful act, without just cause or excuse. *State v. Foster,* 66 S.C. 469, 475–76, 45 S.E. 1, 4 (1903).

Self-defense is a complete defense constituting an excuse for the taking of a life. *State v. Martin,* 216 S.C. 129, 134, 57 S.E. 2d 55, 57 (1949). Pursuant to state law at the time of this trial, a defendant asserting self-defense was required to establish, as was Smart, the following elements by a preponderance of the evidence:

(1) [H]e was without fault in bringing on the difficulty.

(2) [H]e actually believe[d] he was in imminent danger of losing his life or of sustaining serious bodily injury or that he actually was in such imminent danger of losing his life or of sustaining serious bodily injury.

(3) [I]f his defense is based upon his belief of imminent danger, that a reasonable prudent man of ordinary firmness and courage would have entertained the same belief, or if his defense is based upon his being in actual and imminent danger, that the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike a fatal blow to save himself from serious bodily harm, or losing his life.

(4) He had no other means of avoiding the danger of losing his life or sustaining serious bodily injury than to act as he did in the particular instance.

**2.** At different points during the entire charge, the trial court defined reasonable doubt as "a doubt that it is a substantial doubt"; "a doubt for which a person honestly seeking to find the truth can give reason"; "one where, in search of the truth, you can express reason for your decision"; and "not a weak or slight doubt, but a serious or strong and well-founded doubt as to the truth of the charge."

*See State v. Davis,* 282 S.C. 45, 317 S.E.2d 452 (1984).[3]

## III.

It has never been seriously questioned that the Constitution requires that the burden of proof in a criminal case be placed on the prosecution to establish the guilt of an accused beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361–62, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). The Supreme Court explicitly declared in *Winship* that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1073.

Another "long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant." *Patterson v. New York,* 432 U.S. 197, 211, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). But, unlike the reasonable doubt rule, there have been several challenges to the constitutionality of placing a burden on the defendant to prove certain affirmative defenses.

In *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the Court addressed the question of whether due process was violated by a state statute which required a defendant pleading insanity to establish the defense beyond a reasonable doubt. The defendant, who was charged with murder in the first degree, argued that the statute required him to prove his innocence by disproving elements of the crime charged. The Court acknowledged that the jury might have found the defendant mentally incapable of the premeditation and deliberation required to prove first degree murder or the intent essential to both first and second degree murder, but not legally insane. However, the Court concluded that the state was "required to prove beyond a reasonable doubt every element of the crime charged." *Id.* at 794, 72 S.Ct. at 1005. Thus, despite some overlap of proof on the mental element essential to the offense and to the insanity defense, a state may constitutionally place the burden of proving the defense on a defendant.

In *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court addressed the constitutionality of a Maine law which required a defendant charged with murder to rebut a presumption of malice and prove that he acted "in the heat of passion on sudden provocation" in order to reduce a charge of murder to manslaughter.[4] Two degrees of homicide existed under Maine law—murder and manslaughter. Murder was defined as the un-

---

**3.** In *Davis,* the South Carolina Supreme Court instructed the trial courts to proceed with a new instruction in self-defense cases. *Davis,* 282 S.C. at 46, 317 S.E.2d at 453. Although the instruction relieves the defendant of the burden of proving self-defense by a preponderance of the evidence, the state supreme court rejected the defendant's assertion in *Davis* that the affirmative defense unconstitutionally shifted the burden of proof as it previously existed. Prior to *Davis,* the court on at least seven occasions rejected arguments that the affirmative defense was unconstitutional. *See State v. Finley,* 277 S.C. 548, 290 S.E.2d 808 (1982); *State v. Griffin,* 277 S.C. 193, 285 S.E.2d 631 (1981); *State v. Linder,* 276 S.C. 304, 278 S.E.2d 335 (1981); *State v. Crocker,* 272 S.C. 344, 251 S.E.2d 764 (1979); *State v. McDowell,* 272 S.C. 203, 249 S.E.2d 916 (1978); *State v. Atchison,* 268 S.C. 588, 235 S.E.2d 294, *cert. denied,* 434 U.S. 894, 98 S.Ct. 273, 54 L.Ed.2d 181 (1977); *State v. Bolton,* 266 S.C. 444, 223 S.E.2d 863 (1976).

In *State v. Glover,* 284 S.C. 152, 326 S.E.2d 150, *cert. denied,* 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985), the court reiterated the constitutionality of the affirmative defense. However, after emphasizing its disagreement with the holding in *Thomas v. Leeke,* 725 F.2d 246 (4th Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), *see* discussion *infra,* the court stated that it had "cured the purported constitutional violation complained of by the Fourth Circuit," and that "the charge approved in *Davis* shall be applied in all cases tried subsequent to the date of that decision, so long as contemporaneous objection was made at trial." *Id.* at 154, 326 S.E.2d at 151.

Finally, in *State v. Bellamy,* 293 S.C. 103, 359 S.E.2d 63 (1987), the court reversed a murder conviction for failure to comply with the *Davis* charge. The court refused to address the state's contention that the charge was constitutionally adequate pursuant to *Martin v. Ohio,* instead finding that "it does not comport with South Carolina law." *Id.* at 105, 359 S.E.2d at 65.

**4.** Although not an affirmative defense case, *see infra,* a discussion of *Mullaney* is essential to a proper understanding of the development of the law in this area.

lawful killing of a human being with malice aforethought, either express or implied, *id.* at 686 n. 3, 95 S.Ct. at 1883 n. 3 (quoting Me.Rev.Stat.Ann. tit. 17, § 2651 (1964)), and manslaughter as the unlawful killing of a human being "in the heat of passion, on sudden provocation, without express or implied malice aforethought," *id.* (quoting Me.Rev.Stat.Ann. tit. 17, § 2551 (1964)). The jury had been instructed, in accordance with Maine law, "that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Id.* at 686, 95 S.Ct. at 1883 (footnote omitted). The Court held that this instruction violated the due process mandate of *Winship* that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged.

After *Mullaney* a serious question arose as to the constitutionality of requiring a defendant to prove any affirmative defense, except insanity.[5] Many urged, as did the defendant in *Patterson,* that:

> [T]he State may not permit the blameworthiness of an act or the severity of punishment authorized for its commission to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt.

432 U.S. at 214, 97 S.Ct. at 2329 (footnote omitted). However, the Court rejected this interpretation and subsequently clarified the holding: *"Mullaney* ... held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Id.* at 215, 97 S.Ct. at 2329.

The Court squarely held that *Mullaney* should be classified as a presumption case,

and therefore it offers little, if any, support for Smart on the issue of affirmative defenses.[6] In *Mullaney,* as in other presumption cases, the state is improperly relieved of the burden of proving an essential element of the crime charged, and the burden is unconstitutionally shifted to the defendant to disprove the element. *See, e.g., Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). However, in affirmative defense cases, as here and in *Martin,* the state bears the burden of proving beyond a reasonable doubt every element of the crime charged. The defendant is required to prove a separate issue which may or may not overlap with proof of the alleged crime.

In *Patterson,* the Court faced the issue of the constitutionality of requiring a defendant charged with second-degree murder under New York law to prove the affirmative defense of extreme emotional disturbance. As in Maine, the state of New York made a distinction between murder and manslaughter. Second-degree murder required proof that the defendant intentionally killed another person. *Patterson,* 432 U.S. at 198 n. 2, 97 S.Ct. at 2321 n. 2 (quoting N.Y.Penal Law § 125.25 (McKinney 1975)). Manslaughter was defined as the intentional killing of another person "under circumstances which do not constitute murder because [the defendant] acts under the influence of extreme emotional disturbance." *Id.* (quoting N.Y.Penal Law § 125.20(2) (McKinney 1975)). Consistent with New York law the jury was instructed that Patterson had to prove his affirmative defense by a preponderance of the evidence. The Court held that the defense was constitutionally adequate, finding that it was comparable to the insanity defense because "it constitutes a separate issue on which the defendant is required to carry the burden of persuasion." *Id.* at 207, 97 S.Ct. at 2325. The Court expressly stated:

> We ... decline to adopt as a constitutional imperative, operative countrywide,

---

**5.** The Court reiterated the constitutional permissibility of placing the burden on defendants to prove insanity by dismissing the appeal in *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976).

**6.** The majority in *Martin* elected not to cite the *Mullaney* decision, thereby implicitly questioning its applicability.

that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses.... Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense [of extreme emotional disturbance].

*Id.* at 210, 97 S.Ct. at 2327.

## IV.

More recently, in *Martin v. Ohio* the Court examined the same question raised here of whether due process is violated by placing upon a defendant, who is charged with murder, the burden of proving by a preponderance of the evidence self-defense as an affirmative defense.[7] Martin argued, as does Smart, that placing the burden on her to prove the affirmative defense impermissibly required her to negate one of the elements of murder. The Court in *Martin* rejected this contention and we are compelled to do likewise.

## A.

Martin was convicted of the unlawful act of aggravated murder which is defined under Ohio law as "purposely, and with prior calculation and design, caus[ing] the death of another." Ohio Rev.Ann. § 2903.01(A) (Anderson 1987). She "did not dispute the existence of [the elements of aggravated murder], but rather sought to justify her actions on grounds she acted in self-defense." *Martin v. Ohio*, 480 U.S. at 234, 107 S.Ct. at 1102 (citing *State v. Martin*, 21 Ohio St.3d 91, 94, 488 N.E.2d 166, 168 (1986)). Under Ohio law, self-defense is an affirmative defense justifying and rendering lawful otherwise unlawful conduct.

*State v. Davis*, 8 Ohio App.3d 205, 456 N.E.2d 1256, 1261 (1982); *State v. Morris*, 8 Ohio App.3d 12, 455 N.E.2d 1352, 1359 (1982). Pursuant to state law, the burden was placed on Martin to prove the following elements of self-defense by a preponderance of the evidence:

(1) [T]he defendant was not at fault in creating the situation giving rise to the argument;

(2) [T]he defendant had an honest belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of such force; and

(3) [T]he defendant must not have violated any duty to retreat or avoid danger.

*Martin v. Ohio*, 480 U.S. at 230, 107 S.Ct. at 1100.

The Court recognized that self-defense requires proof of an honest belief of imminent danger of death or serious bodily harm and that generally evidence offered to support this element may negate a purposeful killing by prior calculation and design.[8] As Justice Powell stated in his dissent: "Under *Patterson*, this conclusion should suggest that Ohio is precluded from shifting the burden as to self-defense." *Martin v. Ohio*, 480 U.S. at 239, 107 S.Ct. 1105. However, the Court held that it was permissible to require Martin to prove self-defense because "Ohio does not shift to the defendant the burden of disproving any element of the State's case." *Id.* at 234, 107 S.Ct. at 1102.

The same must be said here since the cases are fundamentally indistinguishable. While Smart dwells on the fact that malice is defined under South Carolina law as acting wrongfully without justification or

---

**7.** The Court previously declined to address the issue in *Hankerson v. North Carolina*, 432 U.S. at 237 n. 3, 245, 97 S.Ct. at 2342 n. 3, 2346, and *State v. Moran*, No. 45879, 1983 WL 2712 (Ohio App. Oct. 27, 1983), *cert. denied*, 469 U.S. 948, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984).

**8.** Martin did not dispute that the government proved all the necessary elements of the crime charged, but sought to independently establish a self-defense justification. However, the Court did not rely on the absence of an overlap in

those particular circumstances. *Martin v. Ohio*, 480 U.S. at 234, 107 S.Ct. at 1102.

More realistically, only in the rarest case will proof of an honest belief of imminent danger not negate prior calculation and design. Since the Court validated the Ohio scheme under which overlap of proof will exist in virtually all murder cases where self-defense is asserted, there is no logical reason why the South Carolina scheme should be invalidated because there will be overlap in every case where self-defense is asserted to a charge of murder.

excuse and that self-defense constitutes justification and excuse, this distinction is without meaningful legal significance. There is no fundamental difference between murder under Ohio and South Carolina law even though one expressly includes in its definition of murder the element of malice aforethought—intentional wrongful conduct without just cause or excuse—while the other does not.

### B.

Whatever the merits of this "elemental" analysis, the Court in *Martin v. Ohio* did not rely solely on that point in upholding the placement of the burden on the defendant to prove the affirmative defense. 480 U.S. at 234, 107 S.Ct. at 1102. Rather, more importantly, the Court stressed that while the jury was instructed that the defendant carried the burden of proving self-defense by a preponderance of the evidence, it was also instructed that the state was required to prove each element of aggravated murder beyond a reasonable doubt. The Court stated:

> It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, i.e., that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such instruction would relieve the State of its burden and plainly run afoul of *Winship*'s mandate. The instructions in this case could be clearer in this respect, but when read as a whole, we think they are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime.

*Id.* at 233–34, 107 S.Ct. at 1102 (citations omitted). Justice Powell recognized this reasoning to be the crux of the Court's holding when he articulated in his dissent: "The Court thus seem[ed] to conclude that as long as the jury is told that the State has the burden of proving all elements of the crime, the overlap between the offense and the defense is immaterial." *Id.* at 239, 107 S.Ct. at 1105.

Here, the trial judge repeatedly instructed that the State bore the burden of proving each element of the offense charged beyond a reasonable doubt. And importantly, the jury was not restricted from considering the self-defense evidence "in deciding whether there was a reasonable doubt about the sufficiency of the State's proof of the elements of the crime." *Id.* at 234, 107 S.Ct. at 1102.

Under the instructions, a verdict of guilty could not be returned unless the State had proven beyond a reasonable doubt every element of the offense charged. And, if Smart established the elements of self-defense by a preponderance of the evidence, he would have been entitled to an acquittal. Finally, even if the evidence presented on self-defense failed to meet the preponderance standard, it might still have raised a reasonable doubt on the issue of malice.

### C.

In *Martin v. Ohio* the Court clearly rejected the argument espoused by Smart that simply because one may assert that the definition of murder can be read as overlapping with the elements of self-defense, then the affirmative defense is necessarily unconstitutional. Justice Powell insisted that the clear implication of *Patterson* was that "when an affirmative defense *does* negate an element of the crime, the state may not shift the burden." *Id.* at 237, 107 S.Ct. at 1104. But, whatever the merits of such a contention, the Court has clearly spoken and its result is binding on our decision today.

### V.

Moreover, the district court decision did not comport with prior circuit precedent. In *Thomas v. Leeke*, 725 F.2d 246 (4th Cir.), *cert. denied*, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984), this court held that a jury charge similar to the one here was unconstitutionally contradictory and con-

fusing. However, under *Martin v. Ohio* the instruction would no longer be considered unclear and misleading. 480 U.S. at 234–35 n. *, 107 S.Ct. at 1102 n. *. And, as Judge Hall discussed in his dissent in *Thomas*, 725 F.2d at 252–54, the court has previously upheld as constitutional, under South Carolina law, placement of the burden of proving the affirmative defense of self-defense on a defendant, *Maxey v. Martin*, 577 F.2d 735 (4th Cir.1978) (Table), as well as under Virginia law, *Baker v. Muncy*, 619 F.2d 327 (4th Cir.1980); *Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir.), *cert. denied*, 439 U.S. 876, 99 S.Ct. 215, 58 L.Ed. 2d 191 (1978).

### VI.

Historically, the burden of proving all affirmative defenses—"indeed, 'all circumstances of justification, excuse, or alleviation'—rested on the defendant.... This was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified." *Patterson*, 432 U.S. at 202, 97 S.Ct. at 2323 (citations omitted); *see also Martin v. Ohio*, 480 U.S. at 235, 107 S.Ct. at 1103. After the federal government assumed the burden of proving the sanity of a defendant, *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), many jurisdictions placed on the prosecution the burden of proving sanity and disproving other affirmative defenses, even though the ruling of *Davis* was not constitutionally grounded, *Leland v. Oregon*, 343 U.S. at 797, 72 S.Ct. at 1006–07. Prior to 1984 Ohio and South Carolina were the only two remaining states which placed the burden of proving self-defense on the defendant.[9] And as the Court further noted, the question of the constitutionality of this practice should not be resolved "by cataloging the practices of other States." *Martin v. Ohio*, 480 U.S. at 236, 107 S.Ct. at 1103.

Notwithstanding the widespread changes in other states, the Court in *Martin v. Ohio* found that despite the overlap of proof of murder and self-defense, it was constitutionally permissible to place the burden of proving self-defense on the defendant as long as the state bore the ultimate burden of proving all the elements of murder beyond a reasonable doubt. In light of this clear holding, and the prior precedent of this circuit, Smart's jury instructions plainly satisfied due process mandates. The issuance of the writ of habeas corpus is therefore reversed. The case is remanded to the district court to address the challenge to the reasonable doubt instructions.

REVERSED and REMANDED.

MURNAGHAN, Circuit Judge, dissenting:

To me, the issue presented here is essentially simple though before I am through the canvassing of the many authorities some readers may be convinced otherwise. I start with the key definitional distinction. Malice aforethought is an element, an essential ingredient of the crime of murder in South Carolina. Malice aforethought does *not* enjoy that status in Ohio, or New York. Lack of self-defense equates to malice aforethought. Self-defense in South Carolina is no crime. It is a right. When, as here, the issue of whether or not there is self-defense has been factually injected into the case it becomes one for the jury. As a factual matter going, in South Carolina, to guilt or innocence, it requires the prosecution, as a federal constitutional matter, to prove the absence of self-defense beyond a reasonable doubt. Where malice aforethought is an ingredient the state must prove, even though an affirmative defense may place the burden of production on the defendant to get self-defense into the case in the first place, once the defendant, as is the case here, has raised with some evidence the fact of self-defense, the burden of persuasion must fall, beyond a reasonable doubt, on the prosecution. In other

---

**9.** In *Martin v. Ohio,* the Court noted that "all but two of the States, Ohio and South Carolina, have abandoned the common law rule and require the prosecution to prove the absence of self-defense when it is properly raised by the defen-

dant." 480 U.S. at 236, 107 S.Ct. at 1103. At the time *Martin v. Ohio* was issued, South Carolina had also abandoned the common law rule. *State v. Davis,* 282 S.C. 45, 317 S.E.2d 452 (1984). *See* note 1.

words, in such a case it is error to make the defendant prove the presence of self-defense by a preponderance.

The *en banc* majority tries to escape the force of those principles by going two entirely contradictory ways at once. It asserts that in South Carolina the prosecution must, in a murder case where self-defense has become an issue, first prove guilt beyond a reasonable doubt. Then, South Carolina contends, if a reasonable doubt has not arisen in the jury's mind, the defendant is given a "second chance" to convince the jury, not beyond a reasonable doubt, but just by a preponderance of the evidence, that self-defense has been made out. As counsel for Smart has aptly pointed out, the resulting overlap, rather too generously characterized as a "second chance," rather deserves description as a "ball and chain." How can a jury which has, beyond a reasonable doubt, found no self-defense

reasonably turn around and find it proven by a preponderance of the evidence? From a burden on the prosecution of proof beyond a reasonable doubt, South Carolina seeks to shift the casting of the burden onto the defendant by a preponderance of the evidence.[1]

The South Carolina prosecutor and the *en banc* majority seek to justify so shifting the burden to the defendant by citing a case where, unlike here, there would be no "shift to the defendant [of] the burden of disproving any element of the State's case." The case "did not require it [the prosecution] to disprove self-defense," *i.e.*, to prove malice aforethought. *Martin v. Ohio*, 480 U.S. 228, 231, 234, 107 S.Ct. 1098, 1101, 1102, 94 L.Ed.2d 267 (1987). But, as we shall irrefutably demonstrate, malice aforethought, *i.e.*, lack of self-defense, is an element of the crime of murder in South Carolina, while it is not in Ohio.

**1.** The mistake made by the prosecutor and the *en banc* majority is understandable, but no less erroneous. The approach they adopt apparently is to say that, when someone is accused of murder, he or she may exercise a well-established and time-honored right to do nothing and put the prosecution to its proof. Such an approach in a self-defense case will almost always be forlorn, given the presumption of malice aforethought. Nevertheless, there may exist cases where evidence of self-defense creeps into the prosecution's case-in-chief or the evidence presented through inherent weakness or ambiguity may not constitute proof beyond a reasonable doubt. If the defendant chooses not to address the issue of self-defense when presenting his or her case, then the burden of proof beyond a reasonable doubt remains on the prosecution.

The defendant's failure at the close of the prosecutor's case to secure a motion for a direction of acquittal means either that the evidence will support a finding of absence of self-defense beyond a reasonable doubt, or that, because of the presumption of malice aforethought, self-defense has not even entered the case. Nevertheless, the defendant then has the "second chance" of going forward, to quash the presumption of malice by an affirmative defense raising before the jury the self-defense issue. The prosecutor and the *en banc* majority would say that the defendant who asserts the proposition in court, not having succeeded in the first go-round, when the prosecution had to prove lack of self-defense beyond a reasonable doubt, may reasonably be assigned the burden of proof, here the burden of persuasion by a preponderance of the evidence.

That approach, superficially reasonable as it may sound, overlooks that in South Carolina, by whomever and whenever self-defense is raised, the issue is guilt or innocence, which remains one of fact committed to a jury's determination. When a defendant comes forward under the "affirmative defense," the court is still at an adjudicatory stage. All the essential elements of guilt are being adjudicated, and a court is simply not free to depart from a beyond-a-reasonable-doubt requirement assigned to the prosecutor to a preponderance of the evidence standard falling on the defendant.

All those considerations are outlined in *In re Winship,* 397 U.S. 358, 359, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970), which holds that, despite any attempt to treat a defense as affirmative or to reduce the prosecution's burden of persuasion from beyond a reasonable doubt to "merely" a preponderance of the evidence (*id.* at 360, 90 S.Ct. at 1070), such attempt must fail where at issue is "every fact necessary to constitute the crime for which he (the accused) is charged." *Id.* at 364, 90 S.Ct. at 1073. The existence of self-defense or absence thereof is certainly such an evidentiary fact. A jury resolution of that issue in the defendant's favor leads inexorably to an acquittal, a finding of "no crime." "[I]t is the duty of the Government to establish ... guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'" *Id.* at 362, 90 S.Ct. at 1071.

The situation is aggravated by the hopeless contradictory nature of the instructions. *Sandstrom v. Montana,* 442 U.S. 510, 517, 99 S.Ct. 2450, 2455, 61 L.Ed.2d 39 (1979) ("We are convinced that a reasonable juror could well have been misled by the instruction given.... We cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways."); *Francis v. Franklin,* 471 U.S. 307, 322, 105 S.Ct. 1965, 1975, 85 L.Ed.2d 344 (1985) ("Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity."); *cf. Thomas v. Leeke,* 725 F.2d 246, 250–51 (4th Cir.), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984) ("The court therefore had in one breath instructed the jury that the accused had the burden of proving self-defense by a preponderance of the evidence, yet in the other that the prosecution had to prove beyond a reasonable doubt that the killing had been felonious (and therefore unlawful) and with malice. Confusion in the minds of the jury was inescapable with a charge that was unequivocally contradictory.").

In Smart's case, the jury instruction first read: "The defendant is entitled to any reasonable doubt arising in the whole case or in *any defenses.*" (Emphasis supplied). Within the same charge to the jury, it was instructed: "Because the doctrine of self-defense is an affirmative defense, a defendant will not be entitled to an acquittal on that unless he established by the preponderance, or the greater weight of the evidence, all of the four essential elements of

the doctrine." That is a classic case of contradiction.

The case before the Court concerns a man, Ronald Francis Smart, charged with murder. The situation arose when four people, two women and two men, were killed, Smart being the sole survivor of the group. He was acquitted of murder of the women. In the case of the men, he asserted self-defense, not merely through his own testimony, which at common law would not even have been admissible, *see generally Ferguson v. Georgia,* 365 U.S. 570, 573–75, 81 S.Ct. 756, 758–60, 5 L.Ed.2d 783 (1961), but by evidence from third parties.

The *en banc* majority has focused its attention on the principle of South Carolina state law that, at least in 1981 when South Carolina tried Smart, self-defense in a South Carolina murder case was an "affirmative defense." The South Carolina prosecutors argue that, insofar as Smart is concerned, self-defense was then, and remains now, an affirmative defense all the way. The doctrine of affirmative defense has been historically of long duration and, while it has been limited, has not been entirely eradicated even by relatively recent developments centering on *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).[2]

*In re Winship* and its application in *Mullaney v. Wilbur* thus continued the concept of self-defense as an affirmative defense in South Carolina murder trials up to the point of direct conflict with the Supremacy Clause of the United States Constitution.[3]

---

**2.** Those cases effected a sea change in the common law, including tracking statutory law, as it had developed over the centuries. While the common law had for hundreds of years accepted that self-defense was a vindication and thus, when it was present, self-defense precluded a finding of crime, it had been silent as to who, prosecutor or defendant, had the burden of proving the fact of self-defense or its absence. Courts had, therefore, not surprisingly found it permissible to place the burden of persuasion, at least by a preponderance, on the defendant.

*In re Winship* changed all that, holding that, when an issue of fact going to guilt or innocence is present, while a burden of production, *i.e.,* of going forward, can be placed on the

defendant, all burden of persuasion must constitutionally rest with the prosecution.

**3.** Article Six, Clause 2 provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The United States Constitution is, at least, as manifestly supreme, if in conflict with state

The South Carolina prosecutors of Smart claim that we should carry the doctrine of affirmative self-defense all the way in South Carolina, going beyond the point of conflict with the United States Constitution, though that would impermissibly require assignment to the defendant of the burden of persuasion.

South Carolina law erects a presumption of malice from the mere fact of homicide. *State v. Rochester,* 72 S.C. 194, 200–01, 51 S.E. 685, 687 (1905). Since self-defense equates to lack of malice and malice is an essential element in South Carolina of the crime of murder, it remains a defendant's burden to inject self-defense into the case in a sufficiently substantial way by introducing probative evidence thereof. By alone pleading, or otherwise merely asserting, self-defense, without an introduction

of evidence, the defendant would not shift the burden to the prosecution. Rather his task to secure acquittal on self-defense grounds would remain an affirmative one. He must meet a burden of production. In the absence of probative evidence, the presumption of malice will continue to favor the prosecution.[4]

However, with the introduction of some factually probative evidence of self-defense, *i.e.,* the meeting by the defendant of the burden of production, two most significant things, insofar as the affirmative defense of self-defense is concerned, will have occurred. First, the presumption of malice, with the introduction of some evidence, will have altogether disappeared from the case. *Rochester,* 72 S.C. at 200–01, 51 S.E. at 687.[5] Second, contact by the

laws, as would be a conflicting federal statutory provision.

4. South Carolina might even have gone further than I feel it necessary to go with respect to whether self-defense is an affirmative defense. I merely limit the applicability and extent of the doctrine of self-defense as an affirmative defense. I do not seek to eliminate its very existence. South Carolina in an analogous area of the law does, as things turn out, do away with the doctrine entirely. A plea of alibi "had been ... long held" an affirmative defense. *State v. Bealin,* 201 S.C. 490, 509, 23 S.E.2d 746, 753–54 (1943). But, notwithstanding, in that case it was held:

that the so-called "affirmative defense" of alibi is not an affirmative defense at all. It is simply evidence adduced by the defendant to sustain his plea of not guilty; that he did not commit the crime for the reason that he was not at the scene of the crime at the time of the occurrence. The burden was upon the state to prove beyond a reasonable doubt that the defendant was present at the scene of the crime and actually committed it. If the defendant offers evidence which generates a reasonable doubt in the minds of the jury that he was at the scene of the crime ..., he should be acquitted.

*Id.* at 507, 23 S.E.2d at 753–54 (quoting *State v. Des Champs,* 134 S.C. 179, 181, 131 S.E. 420, 421 (1926)). Failure of the state to prove presence at the scene of the crime beyond a reasonable doubt is fatal to the prosecution's case where the "accused merely controverts the prosecutions' [sic] evidence" in an alibi case. *Id.* at 510, 23 S.E.2d at 755. *See also State v. Schrock,* 283 S.C. 129, 133, 322 S.E.2d 450, 452 (1984).

For essentially the same South Carolina law refusing to classify "accident" as an affirmative defense but, rather, assigning the burden of

proof to the prosecution to prove knowledge beyond a reasonable doubt to show intent, see *State v. Ferguson,* 91 S.C. 235, 244, 74 S.E. 502, 505–06 (1912); *State v. McDaniel,* 68 S.C. 304, 317–18, 47 S.E. 384, 389 (1904).

5. *Rochester* states as follows:

But this presumption is not applicable where the facts and circumstances attending the homicide are disclosed in evidence so as to draw a conclusion of malice or want of malice as one of fact from the evidence. Presumptions of this class are intended as substitutes in the absence of direct proofs, and are, in their nature, indirect and constructive.

....

Where the circumstances preceding and attending an act of this character are full, as in the present case, the prisoner is entitled to the benefit of any doubt that may arise, and cannot be deprived of such benefit by any presumption of guilt arising by operation of law from the naked fact of the homicide....

*Id.* (quoting *State v. Coleman,* 6 S.C. 185, 186–87 (1875)).

*Rochester* continues:

There is no doubt whatever of the isolated proposition that the law presumes malice from the mere fact of homicide, but there are cases as made by the proof to which the rule is inapplicable. When all of the circumstances of the case are fully proved, there is no room for presumption. The question becomes one of fact for the jury, under the general principle that he who affirms must prove, and that every man is presumed innocent until the contrary appears....

*Rochester,* 72 S.C. at 201, 51 S.E. at 687 (quoting *State v. Hopkins,* 15 S.C. 153, 156–58 (1881)). *See also State v. Henderson,* 74 S.C. 477, 479, 55 S.E. 117, 118 (1906); *McDaniel,* 68 S.C. at 314,

affirmative defense with conflicting federal law will have taken place. *Mullaney v. Wilbur,* an opinion by the United States Supreme Court, involved someone charged by Maine with murder. The defendant maintained that his act was not malicious and, therefore, only amounted to manslaughter. In Maine, as in South Carolina, malice *is* an element of the crime of murder so lack of self-defense is also.[6] Of manslaughter malice is not such an element. A defense labelled affirmative could constitutionally remain so, even upon the defendant's introducing evidence, *if* malice did not amount to an element of the crime.

However, since malice was such an element,[7] invoking the Supreme Court decision in *In re Winship,* holding that the prosecution must bear the burden of persuasion on every element of the crime, the United States Supreme Court in *Mullaney v. Wilbur* forbade the Maine prosecutor from relying on a conclusive implication of malice from intent and unlawfulness (which would continue to apply unless the defendant assumed the burden of persuasion,

proving by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation). Instead the Supreme Court required the prosecutor to assume the burden of proving by evidence the lack of passion or provocation, *i.e.,* the presence of malice beyond a reasonable doubt, to sustain the charge of murder, *even though Maine law sought affirmatively to place the burden on the defendant.* As for the burden of persuasion, the Supreme Court refused to follow Maine's lead, which tracked the common law, but rather required the prosecutor factually to prove the presence of malice beyond a reasonable doubt.[8] What the Court was saying was that, when dealing with an element of the crime, it was patently incorrect, once evidence had been introduced, once the burden of production had been met, to assert the defendant's role as one of *defense,* "affirmative" or otherwise. Rather, at this stage one must speak of "affirmative *attack*" and assign the burden to the prosecutor.[9] The burden of persuasion is on the state.[10]

47 S.E. at 387; *State v. Jones,* 29 S.C. 201, 235–36, 7 S.E. 296, 314 (1888) ("[W]hile the law does presume malice ... yet, when the facts attending the homicide are brought out, there is no room for the presumption, and the state must prove the malice from the facts and circumstances attending the homicide, without any aid from the artificial presumption. Of course, this, like all other facts, must be proved beyond a reasonable doubt, and not merely by the preponderance of the evidence.").

6. *"Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt...." *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977).

   See infra note 15 demonstrating that in South Carolina, malice is an essential ingredient of murder. See also *Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820, 824 n. 5 (4th Cir. 1982), where Judge Winter had this to say: "Self-defense is wholly inconsistent with malice" when malice is an element of murder.

7. "After reading the statutory definitions of both offenses [murder and manslaughter], the [Maine trial] court charged that 'malice aforethought is an essential and indispensable element of the crime of murder,' without which the homicide would be manslaughter." *Mullaney v. Wilbur,* 421 U.S. at 686, 95 S.Ct. at 1883. *See Patterson v. New York,* 432 U.S. at 212–213, 97 S.Ct. at 2328.

8. Recasting the presumption as a permissible inference, once it has vanished, *qua* presumption, through the introduction by the defendant of some evidence, *see State v. Peterson,* 287 S.C. 244, 247, 335 S.E.2d 800, 802 (1985), does not significantly aid the prosecution in the present case, for an inference is still a factual matter, unlike a presumption, which is a rule of law, and, therefore, must, with all factual matters in the case, meet the proof-beyond-a-reasonable-doubt standard. *Franklin,* 471 U.S. at 318, 105 S.Ct. at 1973.

9. Federal law of homicide, dealing with the killing of a federal agent, would reach the same result even while referring to self-defense as "an affirmative defense on which the defendant bears the burden *of production* .... ˙ [H]owever, once the defendant has met the burden of production, the government must satisfy the burden of persuasion and must negate self-defense beyond a reasonable doubt." *United States v. Alvarez,* 755 F.2d 830, 842 n. 12 (11th Cir.1985), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985) (emphasis supplied); *cf. Frank v. United States,* 42 F.2d 623 (9th Cir.1930).

10. See in this connection note 20, 421 U.S. at p. 695, 95 S.Ct. at p. 1888 and note 31 at pp. 702–03, 95 S.Ct. at pp. 1891–92 of *Mullaney v. Wilbur* for an exposition of the distinction between requiring the defendant to *produce* some

The majority seeks comfort in and attempts to rely on *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), but that case, in fact, on the contrary, lends support to, and reinforces the propriety of assignment of the burden of persuasion in Smart's case to the prosecution. The absence of extreme emotional disturbance for which there was reasonable explanation or excuse was not an element, in New York,[11] of the crime of murder.[12] New York, therefore, was free to assign the burden of showing extreme emotional disturbance to the defendant, and leave it there, even after some evidence had been introduced by the defendant of its presence, since no conflict with federal law had arisen as a consequence.[13]

It is in such cases as *Patterson v. New York* that there can be a permissible overlap whereby the prosecutor, although the jury must be instructed that proof beyond a reasonable doubt rests on the prosecutor for each element of the crime, may properly obtain an instruction that the burden of proof by a preponderance of the evidence is on the defendant (as to any factual aspect not amounting to an element of the crime).[14] It only remains to show that lack

---

probative evidence and casting on him the burden of *persuading* the factfinder.

Judge Wilkinson has demonstrated why there was error in instructing that Smart bore the burden of proving by a preponderance the presence of self-defense (a burden of persuasion) in *Davis v. Allsbrooks*, 778 F.2d 168, 173 (4th Cir. 1985):

> A burden of production shift, however, does not affect that requirement in any way. The defendant need not meet any persuasion burden at all, but instead must only introduce some evidence to dissipate the presumption and require the state to prove the element of the crime beyond a reasonable doubt.

Indeed, as stated in the Annotation, *Homicide: Modern Status of Rules as to Burden and Quantum of Proof to Show Self-Defense*, 43 A.L.R.3d 221, 225 (1972):

> It is submitted that most, if not all, of the confusion in this area of the law could be eliminated if the term "burden of proof" were stricken from our legal vocabularies and replaced by two more precise terms, such as "burden of persuasion" and "burden of producing evidence."

11. "[T]he New York statute involved no shifting of the burden to the defendant to disprove any fact essential to the offense charged since the New York affirmative defense of extreme emotional disturbance bears no direct relationship to any element of murder." *Patterson v. New York*, 432 U.S. at 201, 97 S.Ct. at 2322.

12. In *Patterson v. New York*, Justice White for the majority held that in New York causing a person's death with an intent to do so alone made out the crime of murder. *Id.* at 205, 97 S.Ct. at 2324. It was also opined that "[m]alice aforethought is not an element of the crime." *Id.* at 198, 97 S.Ct. at 2321.

13. Maine's choice to make malice an element of the crime in *Mullaney v. Wilbur*, also made by South Carolina in *Smart v. Leeke* and, by contrast, New York's constructing its statute in *Patterson v. New York not* to make absence of extreme emotional disturbance for which there

was reasonable explanation or excuse an element of the crime is the controlling consideration here. The United States Supreme Court has had this to say: "Our opinions suggest that the prosecution's constitutional duty to negate affirmative defenses may depend, at least in part, on the manner in which the State defines the charged crime." *Engle v. Isaac*, 456 U.S. 107, 120, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). "The applicability of the reasonable-doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. at 211 n. 12, 97 S.Ct. at 2327 n. 12.

14. *Holloway v. McElroy*, 632 F.2d 605, 624–25 (5th Cir.1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981):

> The States, however, are not completely proscribed from modifying through their legislatures and courts their criminal laws to reflect changing notions and policies: they may, within substantive fairness limits whose boundaries are not yet precisely marked, redefine the elements of their criminal offenses. In so doing, they may wish to reallocate burdens of persuasion on those issues that they remove from the definition of the crime, thereby converting those issues from elements into matters of mitigation or enhancement. Yet the States must also adhere tightly to procedural due process requirements in order to protect adequately the substantive values with which they may not tamper—such as the rule that conviction may be had only when the essential elements included in the definition of the crime have been established to a high degree of accuracy. *Mullaney* and *Patterson* both articulate one variation on the procedural due process requirement that the *Winship* Court found necessary to protect this particular substantive value: despite a State's characterization of an issue as being an "affirmative defense," the State may not place the burden of persuasion on that issue upon the defendant if the truth of the "defense"

of self-defense is an essential element of the crime with which Ronald Francis Smart was charged, and hence something the prosecution had the burden to prove, *i.e.*, persuade beyond a reasonable doubt, once the presumption of malice had evaporated through the introduction of some probative proof of self-defense by the defendant.

The South Carolina crime with which Smart was charged is stated to be murder, defined as killing with malice aforethought.

would necessarily negate an essential element of the crime charged.

The assertion that placing the burden of proof as to lack of self-defense here on South Carolina will require every state, in every affirmative defense case, to prove the negative thus has the hollow ring of debased coinage.

In considering whether *Mullaney v. Wilbur* or *Patterson v. New York* afforded the basis for deciding a case concerning enhanced punishment for visible possession of a firearm, the Supreme Court of the United States in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), rested its decision on the following:

Section 9712, which comes into play only after the defendant has been convicted of an enumerated felony, neither provides for an increase in the maximum sentence for such felony nor authorizes a separate sentence; it merely requires a minimum sentence of five years, which may be more or less than the minimum sentence that might otherwise have been imposed. And consistent with *Winship, Mullaney,* and *Patterson,* the Act "creates no presumption as to any essential fact and places no burden on the defendant"; it "in no way relieve[s] the prosecution of its burden of proving guilt." [*Commonwealth v. Wright,*] 508 Pa. [25], at 35, 494 A.2d [354], at 359 [ (1985) ].

*Id.* at 83, 106 S.Ct. at 2415.

But in *Patterson* we rejected the claim that whenever a State links the "severity of punishment" to "the presence or absence of an identified fact" the State must prove that fact beyond a reasonable doubt.

*Id.* at 84, 106 S.Ct. at 2416.

As the Supreme Court of Pennsylvania observed, the Pennsylvania Legislature has expressly provided that visible possession of a firearm is not an element of the crimes enumerated in the mandatory sentencing statute, § 9712(b), but instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt.

*Id.* at 85-86, 106 S.Ct. at 2416.

Nor does it relieve the prosecution of its burden of proving guilt; § 9712 only becomes applicable after a defendant has been duly

South Carolina Code of Laws § 16-3-10. Malice is an essential element of the crime,[15] just as in *Mullaney v. Wilbur,* and presents in the present situation even a stronger case for requiring a prosecution to show the presence of malice, beyond a reasonable doubt, since the form of malice, namely, the lack of self-defense, is essential to the proof of any crime inasmuch as the failure to negate self-defense when raised in South Carolina should result in a holding that the killing is no crime,[16] while

convicted of the crime for which he is to be punished.

*Id.* at 87, 106 S.Ct. at 2417.

**15.** Murder is taking the life of a fellow being with malice aforethought, either express or implied. *State v. Foster,* 66 S.C. 469, 471, 45 S.E. 1, 2 (1903). "Malice is an essential ingredient of murder." *State v. Harvey,* 220 S.C. 506, 514, 68 S.E.2d 409, 412 (1951). It is the intentional doing of a wrongful act without legal justification or excuse. *Foster,* 66 S.C. at 476, 45 S.E. at 4. Self-defense is legal justification or excuse. *Id.* at 470-71, 45 S.E. at 2. *See also State v. Martin,* 216 S.C. 129, 134, 57 S.E.2d 55, 57 (1949); *State v. Judge,* 208 S.C. 497, 506, 38 S.E.2d 715, 720 (1946); *Ferguson,* 91 S.C. at 241, 74 S.E. at 505.

**16.** *State v. Gaskins,* 284 S.C. 105, 120-21, 326 S.E.2d 132, 141-42, *cert. denied,* 471 U.S. 1120, 105 S.Ct. 2368, 86 L.Ed.2d 266 (1985):

Murder is defined by § 16-3-10 Code of Laws (1976) as follows: "Murder is the killing of any person with malice aforethought, either express or implied." While malice is a necessary ingredient of murder, it is not relevant until and unless it be found the accused person did in fact wrongfully kill the victim.... If the unlawful killing is without malice, the offense is reduced to manslaughter under § 16-3-50. If the unlawful killing is through criminal negligence, the offense is involuntary manslaughter under § 16-3-60. *If the killing is in self-defense, there is no crime.*

(Emphasis supplied).

In speaking of self-defense the South Carolina Supreme Court stated "that was not any crime." *Foster,* 66 S.C. at 470, 45 S.E. at 2. That statement of South Carolina law conflicts with neither the federal Constitution nor a federal statute, so it must be given effect here. See also South Carolina statutory provisions recognizing that in that state self-defense is a right. South Carolina Code of Laws §§ 16-23-410, 470. *See State v. Brooks,* 252 S.C. 504, 510, 167 S.E.2d 307, 310 (1969).

Since a killing and malice aforethought are *the* only two elements of a murder in South Carolina, unless presence on the scene (*i.e.,* lack of alibi) or intention (*i.e.,* absence of accident)

in Maine, insofar as *Mullaney v. Wilbur* was concerned, the absence of the malice involved, while it foreclosed a finding of murder, merely reduced murder to the lesser crime of manslaughter.

It was in South Carolina prior to 1984,[17] and also, to a lesser extent, under current South Carolina and federal Supreme Court doctrine, true that self-defense was and remains today an affirmative defense when, although self-defense has been asserted, no viable evidence has been adduced, and *a fortiori* when self-defense is not even asserted. However, the scope of the concept in the two jurisdictions, federal and state, prior to 1984, differs. Under federal constitutional law both before and after 1984 as well as state law after 1984, where malice is an element of the crime, self-defense is not, *ipso facto* automatically a part of every murder case, but rather enters only upon the defendant's making of an assertion of self-defense, and, even then, not unless the defendant comes forward with sufficient evidence to make it debatable as a matter of fact. Otherwise the presumption of malice, an essential ingredient of the crime, disposes of the matter. When the defense produces some evidence of self-defense, the need for a burden of *proof* of facts has first arisen [18] and the burden of persuasion is assigned to the prosecutor beyond a reasonable doubt.

There being no proof one way or the other on the subject if it is not raised by the defendant, or raised but without evidence being introduced, the situation is an appropriate one for reliance by the prosecution on a presumption. The defense remains an affirmative one. However, equally clearly, upon the defendant's coming forward with some viable evidence of self-defense, as has been done in Smart's case,[19]

in the killing is an implied but not explicitly stated element of the statutory offense and since the element of a killing is indisputably proven in Smart's case, the spotlight focuses on malice aforethought. Self-defense, establishing that there is no crime, and hence no malice aforethought, leads inescapably to the conclusion that malice aforethought in the guise of absence of self-defense must be proven. Otherwise, there simply can be no crime. As a factually contested matter, it is an element of the crime and the burden of proof beyond a reasonable doubt constitutionally must rest with the prosecution.

*Mullaney v. Wilbur* makes clear the following:
It has been suggested, *State v. Wilbur,* 278 A.2d, [139] at 145 [ (Me.1971) ], that because of the difficulties in negating an argument that the homicide was committed in the heat of passion the burden of proving this fact should rest on the defendant. No doubt this is often a heavy burden for the prosecution to satisfy. The same may be said of the requirement of proof beyond a reasonable doubt of many controverted facts in a criminal trial. But this is the traditional burden which our system of criminal justice deems essential. *Mullaney v. Wilbur,* 421 U.S. at 701, 95 S.Ct. at 1891.

**17.** *State v. Glover,* 284 S.C. 152, 326 S.E.2d 150, *cert. denied,* 471 U.S. 1068, 105 S.Ct. 2147, 85 L.Ed.2d 503 (1985); *State v. Davis,* 282 S.C. 45, 317 S.E.2d 452 (1984).

**18.** Hence the presumption evaporates.

**19.** Why, unless he had done so, was self-defense even mentioned, indeed so fully alluded to, in the trial court's jury instructions? The trial judge stated: "There has been presented in this case some evidence which is for you alone to evaluate upon the proposition of what is known as self-defense." He further said: "Upon review of the record the court finds that a reasonable juror could find that the petitioner killed Myers and Baxley in self-defense."

*State v. Robinson,* 47 Oh.St.2d 103, 112–13, 351 N.E.2d 88, 94–95 (1976) was decided at a time when, in Ohio, the burden of persuasion as to lack of self-defense was, by statute, assigned to the prosecution, *i.e.,* there was a time when the law of South Carolina and the law of Ohio were in harmony with one another. The court had this to say:
The procedural steps to be taken by the trial court are well stated in *State v. Millett, supra* (273 A.2d [504] at 508 [ (Me.1971) ]): "* * * When such evidence is forthcoming the trial court must first, viewing that evidence in the light most favorable to the defendant, determine whether or not it is adequate to raise the self-defense issue, and, if believed, would under the legal tests applied to a claim of self-defense permit a reasonable doubt as to guilt, stemming from that claim, to arise. Having concluded as a matter of law that the self-defense issue is thus properly tendered, the trial court need only instruct the jury as to the elements of self-defense. *He will have no occasion to speak of burden of proof other than to explain the State's burden of proving guilt beyond a reasonable doubt.* If the evidence adduced, so viewed, is legally insufficient to raise the issue, the trial court will have no occasion or obligation to instruct the jury on the elements essential to a valid claim of self-defense, but rather will remove the issue of self-defense from jury consideration."

the presumption assigns no role, plays no part. The presumption has nothing to do with the consequent need for a burden of proof. It assigns instead a value only in the case of a complete *absence* of proof.

With the evidentiary introduction of self-defense, the roles, state and federal, divide. While the state of South Carolina, in a case tried in 1981, wishes to continue to make the defense affirmative, to assign the burden of persuasion to the defendant, even after introduction of some evidence probative of self-defense, such an assignment to the defendant of a burden to disprove an element of the crime is constitutionally forbidden. *In re Winship* came down in 1970; *Mullaney v. Wilbur,* a *habeas corpus* case, in 1975.

While the *en banc* majority rests its conclusion on *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), supposing that the Supreme Court's evaluation there contradicts the principle heretofore addressed, that principle, placing the burden of proof beyond a reasonable doubt on the prosecution, in fact, is abundantly supported by *Martin v. Ohio* and cases explicating Ohio law. In *Martin v. Ohio,* the crime charged was aggravated murder, defined as a purposeful causing of the death of another with prior calculation and design. The United States Supreme Court in a 5–4 decision opined that the Ohio law did *not* include malice in defining the crime of aggravated murder, and so left the burden of proof as to self-defense on the defendant.[20] Therefore, if the defendant in Ohio

---

(Emphasis supplied).

In the Ohio Court of Appeals of Franklin County, the lower court opinion had previously adopted a view which that case affirmed, *State v. Robinson,* 48 Oh.App.2d 197, 209, 356 N.E.2d 725, 732 (1975). There was in that case a concurrence which made clear that:

Rather, the existence or nonexistence of self-defense bears a direct relationship to the existence or nonexistence of the required mental elements of the crime. Although *Mullaney* is factually distinguishable, I can find no logical justification for placing the burden of proving self-defense upon the defendant, if placing the burden of proving that he acted in the heat of passion on sudden provocation is unconstitutional.

There was, in Smart's case, clearly sufficient evidence produced to meet the burden of production, the burden of going forward as to self-defense. Smart had told authorities: "I killed everyone of the[m], but they asked for it. They tried to kill me, what difference does it make.... They shot at me and I shot back at them." He, as defendant, adduced testimony that a pistol used in commission of the murders had been held, and perhaps fired by someone else who was at the scene of the crime at the time of its occurrence and was in addition the owner of one of the pistols employed. The two other suspects for the murders for which Smart has been convicted were, in one case, a convicted murderer of a policeman, and in the other a parolee under a sentence for life for safecracking. That Smart was repelling a life-threatening attack was a not implausible, but by no means inevitable, conclusion that the jury might draw. *See Groesbeck v. Housewright,* 657 F.Supp. 798, 803 (D.Nev.1987), affirmed without opinion, 844 F.2d 791 (9th Cir.1988) ("some evidence of self-defense"); *Ybarra v. Wolff,* 662 F.Supp. 44, 46 (D.Nev.1987) ("the burden shifting in-

struction was not harmless beyond a reasonable doubt.").

**20.** The same point was made in an earlier Sixth Circuit Court of Appeals case, *White v. Arn,* 788 F.2d 338 (6th Cir.1986), *cert. denied,* 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686 (1987), brought under the exact same Ohio aggravated murder statute. The defendant was acquitted of aggravated murder but was found guilty of the lesser included offense of murder, defined as purposely causing the death of another. Significantly again "malice" was not an element of the crime. *Id.* at 340. The case held that specific intent and actual death "are the only facts or elements the statute expressly requires the prosecution to establish in order to convict an accused of murder." *Id.* at 344. Obviously then malice is not an element of that Ohio crime. *Accord State v. Davis,* 8 Ohio App.3d 205, 209, 456 N.E.2d 1256, 1261 (1982) ("The elements of murder and attempted murder are expressly delineated in R.C. 2903.2 and 2923.03. The absence of self-defense is not an element of those offenses."); *cf. State v. Morris,* 8 Ohio App.3d 12, 13, 455 N.E.2d 1352, 1359 (1982) ("The crime of felonious assault does not include the absence of self-defense, as one of its elements.").

*White v. Arn* glancingly alludes to and rejects one argument of the defendant not raised in *Martin v. Ohio.* (There the defendant did not dispute, upon the proof of killing, intent, calculation and design, the existence of all the elements of the Ohio crime. *Martin v. Ohio,* 480 U.S. at 231, 107 S.Ct. at 1100–01.) The argument could have been made, but apparently was not made, that, even in the absence of the word "malice" in the explicitly spelled out Ohio statutory definition of the elements of the crime charged, self-defense is such a time-honored and all encompassing concept of mankind that it constitutionally must be inferred that absence of self-defense is present as one element contained in the charging statute by implication

sought to invoke self-defense, he or she could do so only by introducing relevant evidence and then undertaking to meet the burden of proof by a preponderance of the evidence. In Ohio, in short, in the case of the statutory language involved in *Martin v. Ohio*, self-defense was an affirmative defense all the way to the charge of aggravated murder.[21]

A defendant charged with aggravated murder in Ohio, even though successful in meeting the burden of persuasion as to self-defense would remain a murderer though an excused one.[22] In South Car-

even if not explicitly spelled out or at least as an item the prosecution must prove beyond a reasonable doubt. "[I]n certain limited circumstances, *Winship's* reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged." *McMillan,* 477 U.S. at 86, 106 S.Ct. at 2417. See *supra* note 4 for the South Carolina treatment of alibi and of accident making presence on the scene and intent instances where the burden of proof beyond a reasonable doubt is assigned to the prosecution though not alluded to in the statute. The argument need not be examined by us, however, for in South Carolina the statute, altogether unambiguously, makes "with malice aforethought" an element of the crime. A Michigan case dealing with second degree murder, which in that state is, as in South Carolina, killing with malice aforethought, defines the elements of the crime: "(1) that a death occurred, (2) that it was caused by the defendant, (3) that the killing was done with malice, and (4) without justification or excuse." *People v. Porter,* 169 Mich.App. 190, 192, 425 N.W.2d 514, 515, *app. denied,* 431 Mich. 883 (1988).

A relevant point in this connection is that, by merely redefining state law as to what facts constitute a crime so that they become factors bearing solely on the extent of punishment, a state may not escape the constitutional doctrine embodied in *Mullaney v. Wilbur. See id.,* 421 U.S. at 698, 95 S.Ct. at 1889.

**21.** In other Ohio cases, second degree murder under the applicable Ohio statute was defined as purposeful *and malicious* killing. It differs, therefore, in a material and here significant way from the Ohio aggravated murder statute dealt with in *Martin v. Ohio.* The court assumed that it was constitutional error to place the burden of proof on an essential element of the offense on the defendant, "[s]ince proof of self-defense would clearly negate the malice element." However, the evidence of guilt was so substantial, so beyond a reasonable doubt, as to negative any possibility of actual prejudice, rendering the error harmless. *Hooper v. Perini,* 641 F.2d 445, 446 (6th Cir.), *cert. denied,* 454 U.S. 817, 102 S.Ct. 95, 70 L.Ed.2d 86 (1981). *Compare White v. Arn,* 788 F.2d at 344, discussing the second degree murder crime: "malice is an essential element of murder in the second degree." Also *compare Thomas v. Arn,* 704 F.2d 865, 876 n. 13 (6th Cir.1983) in which the Sixth Circuit stated:

In *Hooper v. Perini,* 641 F.2d 445 (6th Cir. 1981), we held that self-defense negates the malice element of Ohio's second degree mur-

der offense. Here, however, the offense is aggravated assault, and conviction of that offense does not require proof of malice. *United States v. Corrigan,* 548 F.2d 879 (10th Cir. 1977), cited by petitioner for the proposition that under federal law self-defense negates criminal intent, is also irrelevant. The issue here is whether under Ohio law self-defense negates an element of aggravated assault.

The earlier case of *Carter v. Jago,* 637 F.2d 449 (6th Cir.1980), *cert. denied,* 456 U.S. 980, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982) superficially appears to cast doubt on whether the self-defense burden might not, in a second degree murder case, with propriety be allocated, in Ohio, to the defendant. However, on study, it is clear that by permissive inference from the facts, and not merely on the basis of a presumption, there was evidence to support a finding of malice beyond a reasonable doubt and that "the evidence including that offered with respect to Carter's defense of self-defense was insufficient to raise a reasonable doubt about his guilt as a murderer." *Id.* at 455–56. Any discussion of who had the burden of proof, since the prosecution met it beyond a reasonable doubt, is unpersuasive *dictum.*

Piling *dictum* on *dictum, Nieb v. Jago,* 695 F.2d 228 (6th Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983), speaks glancingly and approvingly of *Carter v. Jago's obiter* statements. There the defendant in a second degree murder case, was found guilty, but the reasons given to uphold the conviction are entirely different from what concerns us here: 1) substantive default through the failure to preserve for appeal or to show "cause" and "prejudice" under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and 2) the establishment by the prosecution of malice beyond a reasonable doubt. The defendant otherwise had the right to challenge a suspect instruction attempting to assign the burden as to self-defense to him.

**22.** In *White v. Arn,* 788 F.2d at 345, the Sixth Circuit, speaking of *Ohio* law, stated: "The defense of self-defense 'admits the facts claimed by the prosecution to establish an offense but relies on the existence of a separate set of facts or circumstances which the law recognizes as an excuse....'" "[A]n affirmative defense does not negate an element of a crime; ... it indicates that an affirmative defense excuses punishment for a crime the elements of which have been established and admitted." *Id.* at 347. To

olina, however, like an infantryman in the thin grey line who killed in battle at Fort Sumter, or a Revolutionary soldier shooting a British lobster-back at Cowpens, the defendant would be guilty of no crime.

Hence, as a matter of federal constitutional law, absence of self-defense, a form of malice, as an element of the crime in South Carolina must be proved by the prosecution beyond a reasonable doubt.[23] In Ohio, on the contrary, absence of self-defense is not an element of the crime so the self-defense burden of persuasion, in addition to the burden of production, may properly be assigned to the defendant.[24] In

---

similar effect *see State v. Martin,* 21 Ohio St.3d 91, 94, 488 N.E.2d 166, 168 (1986), affirmed in *Martin v. Ohio:* "Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged"; "the defense of self-defense as a 'justification for admitted conduct'"; "admits the facts claimed by the prosecution"; "[t]he elements of the crime and the existence of self-defense are separate issues."

All elements of the offense having been proved beyond a reasonable doubt, the defendant is guilty and attention turns to a separate set of facts to fix the "severity of punishment," if any, which "only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished." *McMillan,* 477 U.S. at 87, 106 S.Ct. at 2417.

On the other hand, unless the absence of self-defense has been proved beyond a reasonable doubt, there simply in South Carolina is no crime, no guilt. *Cf. supra* note 16.

That distinction between South Carolina's "no crime" analysis of self-defense and Ohio's "guilty, but excused," placing the burden of persuasion on the defendant, is but Dostoyevsky's recognition that "Crime" and "Punishment" are not identical. They must differ, to give validity to Ohio's approach, for it is necessary, from Ohio's point of view, to eliminate self-defense or, more precisely, its lack as a factually disputed consideration which must be resolved to make out the crime, and, thereby, to avoid the otherwise constitutionally inevitable rule of *In re Winship,* which holds that, when the fact is essential to the crime of murder, the fact of malice, *i.e.,* lack of self-defense must be established, beyond a reasonable doubt by the prosecution. Since the lack of self-defense *is* as an evidentiary matter, prerequisite to a finding of crime in South Carolina (where there is self-defense, a killing is no crime in South Carolina), the laws of the two states are in stark contrast with one another in a manner here decisive. Making a defendant in Ohio who succeeds in proving self-defense by a preponderance guilty, but excused from punishment, is the only way, linguistically, logically and constitutionally possible.

**23.** *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970): "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

**24.** Relevance is found by the *en banc* majority in cases concerned with the defense of insanity and whether sanity (*i.e.,* the antithesis of insanity) must be proven by the prosecution beyond a reasonable doubt. With all due respect, I fail to perceive their pertinence.

*Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), according to *Leland v. Oregon,* 343 U.S. 790, 797, 72 S.Ct. 1002, 1006–07, 96 L.Ed. 1302 (1952), dealt with a rule applicable to federal prosecutions in a federal territory, not to a state trial. *Davis* was decided on common law principles that the burden of proof beyond a reasonable doubt rested on the prosecutor. The result obviously did not favor the position of the *en banc* majority in the present case. It is, however, furthermore entirely distinguishable as being an appeal altogether unconcerned with the Supremacy Clause or the Fourteenth Amendment to the Constitution.

In *Leland v. Oregon,* on appeal from an Oregon state court where the defendant had pleaded insanity and the burden to prove it was placed on him, "the prosecution was required to prove beyond a reasonable doubt every element of the crime." *Id.* at 794, 72 S.Ct. at 1005. The question of insanity *vel non* was not an element of the crime. Rather "[t]he jurors were to consider separately the issue of legal sanity *per se*—an issue set apart from the crime charged to be introduced by a special plea and decided by a special verdict." The proper verdict was "guilty but insane," not "not guilty by reason of insanity."

"The plea of not guilty by reason of insanity is unknown to Oregon procedure." *State v. Wallace,* 170 Or. 60, 117, 122, 131 P.2d 222, 244, 245 (1942). In South Carolina, the mental condition present to establish self-defense establishes uncontrovertibly the absence of any crime. *State v. Wallace* further states that in case settled insanity is found as a matter of fact "it will excuse crime committed under its promptings." *Id.* at 82, 131 P.2d at 231. To sum up the Oregon law, the highest court of that state has referred to its frequent statements that

"if excessive and long-continued use of intoxicants produces a mental condition of insanity, permanent or intermittent, which insane condition exists when an unlawful act is committed, such insane mental condition may be of a nature that would relieve the person so affect-

Ohio, guilt of the crime remains, punishment for it alone is excused.

In short, therefore, clear precedents indisputably lead to the conclusion that the grant of *habeas corpus* subject to a prompt retrial granted by the district court should be affirmed.[25] The only reason to the contrary advanced by the *en banc* majority is a supposed one deriving from South Carolina law which loosely, but not too precisely, depends on a definition of "affirmative defense."[26] That state law, however, is in conflict with the supreme law of the land and must yield thereto.[27] The fact is that a

---

ed from the consequences of the act that would otherwise be criminal and punishable." *State v. Smith*, 260 Or. 349, 352–53, 490 P.2d 1262, 1264 (1971) (quoting *State v. Wallace*, 170 Or. 60, 81, 131 P.2d 222, 230 (1942)). The insanity cases are, consequently, simply not on point.

25. The reasons are simply recapitulated in an encapsulated summary: Whenever in a criminal case a factual issue is presented by evidence going to whether the defendant is guilty *vel non*, the burden constitutionally rests on the prosecution to prove beyond a reasonable doubt that, as to that disputed fact, the accused is guilty. In South Carolina, if the matter of self-defense is factually presented, as here, the burden of production is met, so guilt or non-guilt is at issue. If there is some evidence of self-defense, and its absence when considered with the prosecution's countervailing evidence does not appear beyond a reasonable doubt, in South Carolina there is no crime. In contrast of controlling proportions, in Ohio the prosecution need not prove lack of self-defense to establish the crime of murder. The defendant in Ohio must prove self-defense to obtain excuse from punishment for the crime all the elements of which the prosecution has succeeded in proving. Self-defense in Ohio goes only to the appropriateness of punishment for the made-out crime. To most of us, especially, it would appear, in South Carolina, to be labelled a murderer—albeit an excused one—when one has been forced, in order to save one's own life, to repel with lethal consequences the onslaught of an attacker, is not acceptable.

To kill in self-defense is simply not a crime in South Carolina. More modern Biblical scholarship appears to accept that "Thou shalt not kill," while perhaps more euphonious or poetical, is not so accurate a statement of the Commandment as "You shall not murder." Tanakh, A New Translation of the Holy Scriptures According to the Traditional Hebrew Text (1985), Exodus ch. 20, verse 13; The Holy Bible, New International Version (1978), Exodus ch. 20, verse 13. Where absence of self-defense is in reasonable doubt, there is no murder in South Carolina.

It frankly surprises me that South Carolina labors so mightily in the present case to promote an indefensible noncompliance with a tenet of constitutional law in order to avoid a retrial which will do no more than assure a trial which comports with due process, *i.e.*, fundamental fairness, in stark contrast to the trial given to Smart, which does not. In gaining affirmance of the order granting him *habeas corpus*, he will not have won acquittal but will still be faced with a fairly conducted trial, which the prosecutor appears to feel confident he can win. As an appellate court, our function is not to usurp the jury's role to determine guilt or innocence. Ours is but to achieve fairness in criminal trials to the greatest possible extent. Saddling Smart with the burden of persuasion as to self-defense, he having produced some evidence thereof, was not merely unfair. It was unconstitutional.

26. To avoid the inevitable the *en banc* majority seeks to build on the sand surrounding the non-citation in *Martin v. Ohio* of *Mullaney v. Wilbur*. Yet the failure to cite stemmed from the fact that was the controlling distinction between the two cases. In *Martin v. Ohio*, malice (*i.e.*, lack of self-defense) was not an element of the crime; in *Smart v. Leeke* it was. To cite *Mullaney v. Wilbur* might only aggravate confusion because it manifestly did not apply to *Martin v. Ohio* once the defendant there acknowledged that all elements of the crime were proven and malice was not one of them.

Recent citations by the Supreme Court of *Mullaney v. Wilbur* postdating *Martin v. Ohio* attest that its continued vitality is unimpaired. *See Hicks v. Feiock*, 485 U.S. 624, ——, 108 S.Ct. 1423, 1433, 99 L.Ed.2d 721 (1988); *Yates v. Aiken*, 484 U.S. 211, ——, 108 S.Ct. 534, 536, 98 L.Ed.2d 546 (1988).

In the effort to explain away *Mullaney v. Wilbur* the *en banc* majority attempts simply to dismiss that case as "a presumption case" as though by that verbal gymnastic cabalistically a valid distinction has been made to appear. Yet, if *Mullaney v. Wilbur* refuses, on the basis of a presumption to allow a technique applying a substitute for proof when *no* evidence is forthcoming from the defendant or the prosecution on self-defense, how much more applicable is the case when the defendant produces some positive evidence—meets the burden of production—thereby engaging *In re Winship*'s requirement of "proof beyond a reasonable doubt of every fact necessary to constitute the crime ... charged."

27. Georgia has recognized the inevitable:

We recognize, of course, that our Criminal Code has designated self-defense as an "affirmative defense." Code Ann. § 26–907. Constitutional rights, however, are not determined on the basis of such labels. Thus, while it has sometimes been said that the burden as to an affirmative defense is upon the defendant, we are persuaded by recent

state may define something as an affirmative defense as it pleases, assigning the burden of proof to the defendant, in the absence of evidence or *so long as the evidence presented does not tend to show that its opposite is not part and parcel of the definition of the crime.*[28] South Carolina may even still render the defense of self-defense *affirmative* in the sense that a failure by the defendant to produce any sufficient evidence of self-defense would

constitute a failure to act affirmatively, to go forward to meet the burden of production. But, in controlling contrast, where sufficient evidence has been mustered by the defense to make the issue of self-defense debatable, the proof of the absence of self-defense—that essential ingredient of the crime of murder in South Carolina—must be assumed by the prosecution beyond a reasonable doubt.[29]

decisions of our Supreme Court that the only burden placed upon a defendant with respect to *all* affirmative defenses is the burden of production. This interpretation is consistent with the statutory definition of affirmative defense: "With respect to any affirmative defense authorized in this Title, unless the State's evidence raises the issue invoking the alleged defense, the defendant to raise the issue, must present evidence thereon ..." Code Ann. § 26–401(a).

We conclude that in a murder prosecution, where the state's case contains no evidence of justification, the defendant has the burden of producing some evidence in order to create a factual issue as to self-defense. Once this is done, the state then has the burden of proving, beyond a reasonable doubt, unlawfulness or the absence of justification for the act. The instruction here deprived defendant of due process of law by erroneously placing upon him the burden of persuasion as to an essential element of the offense. Accordingly, defendant must be granted a new trial. *Johnson v. State,* 137 Ga.App. 740, 745, 224 S.E.2d 859, 863 (1976), *vacated, State v. Johnson,* 237 Ga. 276, 227 S.E.2d 345 (1976) (emphasis in original).

The *Johnson* case was later reversed, on the ground that, while it was a correct statement of the law, it would not be applied retrospectively. *Johnson v. State,* 140 Ga.App. 343, 231 S.E.2d 75 (1976). Any such excuse on retrospective inapplicability grounds is not available in Smart's case since the federal constitutional rule announced in 1970 and 1975 by *In re Winship* and *Mullaney v. Wilbur* long antedated Smart's trial and conviction in 1981.

**28.** The South Carolina attempted approach here simply does outright violence to its own established rule that there is "no crime" when self-defense, as a matter of fact, is present. The absence of self-defense, also a factual matter, must be shown before there is a crime. It is thus an essential element.

South Carolina seeks to argue an essential identity between itself and Ohio, but, in Ohio, without addressing self-defense or its absence, an Ohio prosecutor has succeeded in making out *all* the elements of the crime of murder. Self-defense as an affirmative defense does not, in Ohio, negative an element of the crime. With the elements of murder established and

admitted in Ohio, whether punishment should be excused is the only remaining question to be addressed on the subject of self-defense. In South Carolina, things are radically different for there has been no crime in the first place.

Along the spectrum established by the function: 1) innocence, 2) vindication, 3) guiltlessness, 4) justification, 5) non-criminality, 6) crime, 7) guilt, 8) excused guilt, 9) punishment, 10) culpability and 11) blameworthiness, South Carolina stands at one end, Ohio at the other.

**29.** It is particularly instructive to pay heed to *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), where both the majority of the court and the four dissenters regarded it so self-evident as not even to merit discussion, in a case of murder where malice was an element of the crime, that in a *habeas corpus* proceeding the placing of the burden of persuasion on the defendant of proving self-defense or lack of malice had impermissibly offended *Mullaney v. Wilbur.*

An understanding of the nature of "self-defense" and of "malice aforethought" is so essential to comprehension of what is here involved that the very discerning and thorough examination in the opinion in *People v. Morrin,* 31 Mich. App. 301, 187 N.W.2d 434 (1971) will repay study. The United States Supreme Court has cited the case with approval. *Mullaney v. Wilbur,* 421 U.S. at 695 n. 20, 95 S.Ct. at 1888 n. 20. In *Morrin* the court was confronted with and dealt exhaustively with the definitional aspects of both first and second degree murder, each of which required a showing of a homicide accompanied by malice aforethought. First degree additionally required proof of willfulness, deliberation and premeditation, which from the start were deemed insufficiently proven so the case deals with a crime essentially identical in its definition with the one in South Carolina. The definition derives its text in Michigan from the age-old common law [*Berrier v. Egeler,* 583 F.2d 515, 521 n. 1 (6th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978) ] while the distilled substance of the common law is to be found in South Carolina Code of Laws § 16–3–10. For both murder is killing with malice aforethought.

From the *Morrin* case are to be gleaned the following pertinent observations:

a) *Morrin*, 31 Mich.App. at 310, 187 N.W.2d at 438:

Homicide ... may be innocent or criminal. There are two categories of innocent homicide, ... justifiable homicide and excusable homicide.... Homicide is 'justifiable' if it is authorized (*e.g.*, self-defense) or commanded (*e.g.*, execution of a death sentence) by law.

b) *Id.* at 310–11, 187 N.W.2d at 438:

Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter.

c) *Id.* at 314, 187 N.W.2d at 440: Malice aforethought "distinguished criminal from innocent homicide...."

d) *Id.* at 314 n. 17, 187 N.W.2d at 441 n. 17:

But, even where there is actual intent to kill and circumstances of mitigation are not present, *malice aforethought is not present if the actor acted justifiably, e.g., self-defense.* (Emphasis supplied)

e) *Id.* at 315 n. 19, 187 N.W.2d at 441 n. 19 (quoting Perkins on Criminal Law (2d ed.) at 49–51):

"Since this is a presumption [namely, of the presence of malice aforethought] in the true sense it merely places upon the defendant the burden of going forward with the evidence. It is rebuttable and may be overcome by evidence which throws a different light upon the situation or indicates exculpating or mitigating circumstances."

f) *Id.* at 317, 187 N.W.2d at 442–43:

Speaking of the presumption of innocence as a "golden thread" running through the common law, the Court [the British House of Lords] rejected a formulation that required the jurors to find a defendant guilty unless he discharged his burden of rebutting the presumption of malice.

g) *Id.* at 318, 187 N.W.2d at 443:

The Michigan Supreme Court recognized at an early date the importance of categorizing malice aforethought as a permissible inference rather than a presumption.

That permitted the reinvigoration—a resuscitation—of the presumption, which, itself, applied only in the case that evidence was totally absent and which totally evaporated on the production of some evidence of self-defense by the defendant, in a completely different guise, *i.e.*, as a permissible inference. The permissible inference being an evidentiary matter merely became part of the bundle of facts to be proven by the prosecution beyond a reasonable doubt.

h) *Id.* at 320, 187 N.W.2d at 444:

The retention of "malice" in the law of murder is a constant source of trouble and confusion. The word has long been a highly technical "word of art" practically never used in its natural meaning and so ambiguous and indefinite that lawyers and judges themselves find difficulty in treading the mazes of its various meanings....

Citing Moreland, Law of Homicide, pp. 205, 206.

i) *Id.* at 320 n. 25, 187 N.W.2d at 444 n. 25: [H]owever, again, the true issue would not be whether the actor was corrupt, malignant or depraved but whether he was justified in acting as he did in self-defense or whether it was an accident or there were circumstances of mitigation.

j) *Id.* at 323, 187 N.W.2d at 445–46:

Courts might well emphasize that juries can convict of murder only when they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do *not* exist. A judge could, for example, charge that the defendant is guilty of the crime of murder if the jurors find, beyond a reasonable doubt, that he killed the victim and that he actually intended to kill the victim ... unless ... the jurors have a reasonable doubt whether ... the defendant justifiably acted in self-defense.

k) *Id.* at 332 & n. 54, 187 N.W.2d at 451 & n. 54:

Morrin's exculpatory testimony, although disbelieved by the jury, was not substantive evidence of facts inconsistent with his account. ["The mere disbelief of a witness' testimony cannot serve to fill an evidentiary gap in the case; ...."] (quoting *People v. Matthews*, 17 Mich.App. 48, 53, 54 n. 5 [169 N.W. 2d 138] (1969).

History still outweighs logic, as was observed in a famous, oft quoted aphorism of Justice Oliver Wendell Holmes. Between the thirteenth and sixteenth centuries in England, where the common law originated, self-defense became in law a justification for, a vindication of killing. *Mullaney v. Wilbur*, 421 U.S. at 692, 95 S.Ct. at 1886. Of course, the announcement of the principle that, on the proof of self-defense, there had been no crime did not address the question of where the burden of proof by persuasion—*i.e.*, of self-defense or the lack thereof—lay, and many states, under the common law, continued to call upon the defendant to prove the affirmative, to assume the burden of persuasion.

*In re Winship* in 1970 changed all that. Any fact necessary to show that a crime had been committed was one that the prosecution had to prove beyond a reasonable doubt and the absence of self-defense, *i.e.*, the presence of malice, was such an essential element of the crime of murder.

*Martin v. Ohio* presents the exceptional case, and thereby tests the rule. In Ohio, the statutory enactment, in 1974, wiped out the justification ("no crime") status in that state where the common law or a statute tracking it had theretofore applied for self-defense. Ohio Rev.Code Ann. § 2903–02(A). *See Shifting the Burden of Proving Self–Defense—With Analysis of Related Ohio Law,* 11 Akron L.Rev. 717, 754 (1978). Self-defense in Ohio does not statutorily negate an element of the crime but only excuses punishment for a crime the elements of which have been established and admitted. In South Carolina, however, the statute merely tracks, but

South Carolina in this case evidences reluctance to relinquish a state rule that treats, for "affirmative defense" purposes, something which, under federal constitutional law, is no longer classifiable as a defense. It exalts South Carolina law over federal law in case of conflict.[30] However, the Federal Government and the Constitu-

does not alter, the common law insofar as the elements of the crime of murder are concerned. *State v. Judge,* 208 S.C. 497, 505, 38 S.E.2d 715, 719 (1946) ("Section 1101 of the Code of 1942 defines murder in this language: 'Murder is the killing of any person with malice aforethought, either express or implied.' This definition in no wise affects the ingredients which are necessary to constitute murder, but leaves them exactly and in every particular as they stood at common law."). *State v. Rector,* 158 S.C. 212, 215, 155 S.E. 385, 386 (1930). The "no crime" status for the right of self-defense remains intact in South Carolina.

Thus Ohio's replacement, with a *differing* statute, of the common law makes the difference while South Carolina's statute, precisely because it does not depart from the common law, does not. *In re Winship.* The difference may not have been perceived in 1974, when the Ohio statute was passed, since even courts in common law states had sometimes made the affirmative defense of self-defense one all the way even through the burden of persuasion. But perception came with *In re Winship* and has been established in *Martin v. Ohio*'s holding. But South Carolina, in contradistinction to Ohio, was and is a different country, and, whether or not the wench is dead, South Carolina's law is at variance in the respect here at issue with Ohio's.

**30.** To illustrate the true nature of South Carolina's effort here—to show that its endeavor is to frustrate, to forestall, not to enforce the law—one need only appreciate the basic distinction between the law of murder in Ohio and the law in South Carolina. To make out murder in South Carolina, one must prove malice, an essential ingredient of the crime in that state. To the contrary, a prosecutor trying someone for murder in Ohio is *not* required to prove malice.

The common law is the source of the definition of the law of murder in most states. It is killing (or homicide) with malice aforethought (or prepense) in some, no doubt most, states. *E.g., In re Morrin* does it for Michigan, relying directly on the common law. In South Carolina, a substantially identical definition of murder is provided by statute. At any rate, whatever the reason, forty-eight states and the federal government impose, in a case where self-defense is raised, the burden of persuasion beyond a reasonable doubt on the prosecution.

Some of those states may have done so for statutory or even common law reasons, and, if so, South Carolina is not bound to follow them, on those grounds. It need not give the same meaning in South Carolina to other states' common law or statutory provisions. *See Martin v. Ohio,* 480 U.S. at 236, 107 S.Ct. at 1103 ("that question is not answered by cataloguing the practices of other States").

But—and this is critical—some other states, particularly where a federal appeals court has ascertained the applicable law, have required prosecutors to meet the burden of persuasion for reasons of federal constitutional law, relying on the presence of malice as an essential ingredient of the crime of murder. I think it safe to say that where malice aforethought is an element of the crime of murder, as it is in the present case, but not in Ohio, and some evidence of self-defense has been adduced, as here, the burden of persuasion on self-defense cannot be allocated to the defendant. Rather, the burden of persuasion of the lack of self-defense must be assumed by the prosecution. We know of no case since *Mullaney v. Wilbur* was decided in 1975 which holds to the contrary. Just addressing federal courts of appeal, which have decided on federal constitutional grounds, there are the following cases which support our assertion: *Wynn v. Mahoney,* 600 F.2d 448 (4th Cir. 1979), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979); *Guthrie v. Warden, Maryland Penitentiary,* 683 F.2d 820 (4th Cir.1982); *Holloway v. McElroy,* 632 F.2d 605 (5th Cir. 1980); *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed. 2d 347 (1978).

The advent of *Martin v. Ohio* has afforded no grounds for a different result. *Groesbeck v. Housewright,* 657 F.Supp. 798, 802 (D.Nev.1987), affirmed without opinion, 844 F.2d 791 (9th Cir.1988), decided after *Martin v. Ohio,* reached the result for which we contend, namely, that the burden of persuasion in a self-defense case where malice is an element of the crime remains on the prosecution ("In upholding the Ohio conviction, the [United States Supreme] Court merely stated that the state may shift the burden of proof on self-defense to the defendant, *where that issue is not an element of the crime itself"*) (emphasis supplied). Federal constitutional law correctly stated must be followed in all states, South Carolina included. That means the *en banc* panel majority has accepted that in the instant case it has held that South Carolina, where malice is an element of the crime, all by itself, is right and that no less than three federal circuits are unanimously wrong as a matter of federal constitutional law. The *en banc* majority has unceremoniously cast aside even respected Fourth Circuit authority. *E.g., Guthrie v. Warden, Maryland Penitentiary, supra.* That is, I submit, an error of egregious as well as of constitutional proportions. The error is amenable to correction only if the conflict of the circuits is addressed by the United States Supreme Court. That should be done, for Smart properly has a point to raise as to whether he should be forced to serve a life sentence, although he has been without justice foreclosed

tion to which each of the states, and individually every one of us, owes allegiance are supreme and must be followed. For the failure of the *en banc* majority to do so in this case, I dissent.[31]

PHILLIPS, Circuit Judge, dissenting:

I fully agree with the central point of Judge Murnaghan's powerful and comprehensive dissenting opinion and with the result he would reach. I write separately only because of reservations about some of its peripheral observations and their possible implications for future applications in this important and difficult area. In particular, I have doubts about its "no-crime"/"excused-crime" distinction as a basis for deciding whether burdens of persuasion may properly be placed on defendants. Maj. op. at 1568 & n. 22. Attempting such a distinction seems of doubtful utility to the overall analysis, but were I to attempt the distinction that I assume is intended, I would describe it as that between "no crime because criminal conduct not proven" and "no crime because conduct otherwise criminal excused or justified." *See Patter-*

*son v. New York,* 432 U.S. 197, 206, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). Furthermore, I have reservations about portions of the extended discussion, at 1566, n. 1, of the interrelationship of burdens of proof, presumptions, and jury instructions in cases of this type. *Cf. Davis v. Allsbrooks,* 778 F.2d 168, 177–83 (4th Cir.1985) (Phillips, J., concurring specially) (analyzing comparable proof/presumption/jury-instruction scheme under North Carolina homicide law).

These points of doubt are, however, peripheral to the central point of Judge Murnaghan's dissent and do not prevent my complete agreement with it. In order to emphasize that, I summarize here the core of the agreement.

As South Carolina has defined the crime here charged, the defense of "self-defense" to it, and the interrelation of the two, the crime includes an element, "malice aforethought," as to which "self-defense" is simply a factual negation rather than a true "affirmative defense" which excuses or justifies by "confession and avoidance."

from a fair consideration by the jury of self-defense, which in South Carolina means that there has been no crime at all—no assessment of time to serve in prison. Even if he loses in a retrial on the merits, but has seen the burden of persuasion allocated to the prosecution, where it belongs, Smart will not be plagued by the thought that he was denied due process in the course of his incarceration.

The problem is by no means confined to Smart, for, despite the Supreme Court of South Carolina's grudging admission in 1984 that, thenceforth, under South Carolina law the burden of persuasion, where self-defense was raised by some evidence, would be on the prosecution, there are many South Carolina prisoners who have suffered conviction under a fatally flawed burden of persuasion instruction and are entitled to a grant of *habeas corpus* so that they may be tried fairly rather than unconstitutionally. The most obvious example is Griffin in *Griffin v. Martin,* 785 F.2d 1172 (4th Cir.1986), who there received a grant of *habeas corpus* subject to a prompt retrial, only to see that result evaporate through a grant of *en banc* rehearing and the judgment by an equally divided court affirming the district judge's denial of the writ. *Griffin v. Martin,* 795 F.2d 22, (4th Cir.), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987). A number of South Carolina cases assigned to the defendant the

burden of persuasion, though each one post-dates 1975, and hence is after the 1970 sweeping changes of *In re Winship* and the application of the *In re Winship* doctrines in 1975 by *Mullaney v. Wilbur. See Griffin v. Martin,* 785 F.2d 1172, 1185 (4th Cir.1986).

Some of the defendants convicted on the basis of a constitutionally incorrect charge—and denied writs of *habeas corpus* to correct the error —are probably still living and incarcerated. They should not be denied the right to a fair trial which has heretofore escaped them.

While round on the ends and "hi" in the middle, Ohio is not so tall as to justify the result of the *en banc* majority. It is pushed to that height here only incidentally, through the action of South Carolina in attempting by reliance on *Martin v. Ohio,* to exalt South Carolina law above the Constitution of the United States.

**31.** The *en banc* majority has held that there should be a remand to allow the district judge to investigate the appropriateness of the reasonable doubt definition in the charge given by the South Carolina judge who presided at Smart's trial. However, that approach only leads to more delay for Smart, who has not been properly convicted and deserves prompt retrial, a retrial which assigns the burden of persuasion to the prosecution, where it constitutionally belongs.

Under controlling Supreme Court precedents, the technical distinction between these two types of "defenses" to criminal charges determines whether the burden of persuasion as to a particular "defense" may constitutionally be placed upon a defendant. The question whether it is the one or the other type is determined by parsing state law to identify the elements of the crime and the nature of the defense and asking the question whether the "defense" merely negates one of those elements, hence the conduct defined as criminal, or instead legally excuses or justifies that conduct (wholly or partially) for reasons independent of the elements making up the conduct. If by this analysis a "defense" is of the latter type, it is an "affirmative defense" and the burden of persuasion to establish it may constitutionally be placed upon a defendant who properly asserts it. *Martin v. Ohio*, 480 U.S. 228, 233, 107 S.Ct. 1098, 1102, 94 L.Ed.2d 267 (1987) ("self-defense" justifies rather than negates conduct otherwise "aggravated murder" as defined by Ohio); *Patterson v. New York*, 432 U.S. at 206–07, 97 S.Ct. at 2325 ("extreme emotional disturbance" partially excuses rather than negates conduct otherwise "murder" as defined by New York); *cf. Leland v. Oregon*, 343 U.S. 790, 799–800, 72 S.Ct. 1002, 1008, 96 L.Ed. 1302 (1952) ("insanity" negates no element of murder as defined by Oregon; burden to prove it may therefore be placed on defendant). If by this analysis, however, the "defense" merely negates factually an element of the crime, it is unavoidably not an "affirmative defense," and the burden of persuasion to establish it may not constitutionally be placed upon a defendant. *Mullaney v. Wilbur*, 421 U.S. 684, 697–99, 95 S.Ct. 1881, 1888–90, 44 L.Ed.2d 508 (1975) ("heat of passion on sudden provocation" merely negates factually "malice aforethought" element of murder as defined by Maine); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

As Judge Murnaghan's opinion conclusively demonstrates, as South Carolina defines "murder," "self-defense" under that state's law falls in the *Mullaney* factually negating category rather than the *Martin, Patterson, Leland* "affirmative defense" category of "defenses," so that the burden of persuasion to establish that "defense" could not constitutionally be placed upon the petitioner in this case.

Chief Judge ERVIN has asked to be shown as joining in this dissent.